### CLARENCE FERGUSON, v. STATE OF FLORIDA

25 So. (2nd) 799
April 23, 1946

January Term, 1946
Division B

*Merritt & Newberry,* for appellant.

*J. Tom Watson,* Attorney General, and *Reeves Bowen,* Assistant Attorney General, for appellee.

THOMAS, J.:

In his first question the appellant challenges the propriety of the trial judge's denial of a motion for mistrial based on a remark supposed to have been made by the county solicitor in the course of his argument to the jury drawing attention to the failure of the defendant to testify. We would not hesitate to invoke the statutory inhibition set out in Section 918.09, Florida Statutes, 1941, and F.S.A., and reverse the judgment if the record in this case disclosed comment by the prosecuting officer upon the defendant's silence. Such an incident in the trial of the present case could, however, only be assumed from a motion made by appellant's attorney. Sole reference in the trial record pertinent to this situation follows: "Argument by Mr. Caro. MR. NEWBERRY: The defendant moves for a directed verdict—for a retrial [sic] on the ground Mr. Caro is arguing on the fact this man, the defendant, did not take the stand and testify. BY THE COURT: overruled and exception noted."

The dearth of recorded information on the subject was not remedied by the ground in the unverified motion for new trial that the prosecutor had made such comment.

We would not be justified in disturbing the judgment for the reason given unless the record contained the utterance of the prosecuting officer and that utterance convinced us he had transgressed the provisions of the statute we have cited. See Pendleton v. State, 130 Fla. 774, 178 So. 835.

The statement we have quoted, made by counsel for appellant, is hardly more than a self-serving statement couched

in the language of a motion, and is entirely insufficient to demonstrate any mistake on the part of the trial judge when he denied the motion. We apprehend that our view will not be very supprising to appellant, for in his brief he observes that his position with reference to this point might "seem peculiar . . . when there is nothing in the record to show this Court that the prosecuting attorney uttered any remark . . . about the failure of the appellant to testify" except as may be gleaned from the motion.

The remaining point in controversy is the sufficiency of the evidence to warrant a conviction of grand larceny. The defendant offered no evidence. From all the witnesses on behalf of the state, save the deputy sheriff who returned appellant to Florida from California, where he was apprehended when he attempted to pawn the stolen property, we learn the following details: A golfer left a valuable wrist watch for safe-keeping with the man in charge of the clubhouse, and teed off. Before the manager took the article from the counter, where the owner placed it, he was called to the telephone, and when he returned he too started playing golf, forgetting the request to care for the property. About three hours later the loss was discovered. The defendant worked at the clubhouse, and was in it at the approximate time the watch disappeared. Many other persons frequented the place, sometimes as many as thirty or forty, most of them caddies.

Until the deputy sheriff took the witness stand, although the larceny had been proved, no testimony whatever had been adduced connecting the defendant with the actual theft. The State relied upon the story of this officer to establish the possession of the stolen property by the defendant.

There can be no doubt that the defendant had the watch with him in Los Angeles. He was asked by the deputy there if the watch eventually identified and offered in evidence in the trial of the case was the same one he had attempted to pawn, and he said it was. He freely related the circumstances leading to his discovery with the loot. By his own statement he had gone to the place of a pawn broker for the purpose of pledging the watch, but became frightened when the broker asked him to sign his name and ran away, leaving the watch.

When he summoned enough courage to return for it, the police seized him. His explanation of the way he came to possess the stolen property was most flimsy. He was imbibing intoxicating liquor in Pensacola, so he said, when a boy, whose name he was unable to recall, obtained a loan from him and left the watch as security. The appellant continued drinking, and the following day could not remember how he got possession of the property. Nevertheless he dressed and decided to return it to Dr. Stritzinger, the husband of the owner; then changed his mind and left for California instead. He explained his knowledge of the name of the owner by saying he had heard " 'all of the boys . . . talking about it [presumably the theft].' "

Interpreting the evidence in the light of our decision in McDonald v. State, 56 Fla. 74, 47 So. 485, even though there was no positive evidence that the defendant took and carried away the property, there was abundant testimony that it was stolen, that he had the opportunity to take it, that he fled from Florida to a distant state, that he attempted to pawn the very property, that he again fled when the pawn broker asked his identity, that he was apprehended in the act of receiving the property back from the pawn broker, that he knew whose property it was.

To be weighed against these circumstances is his unconvincing explanation. In the same decision we announced the rule that if a person found in possession of goods recently stolen gives a reasonable and credible account or such an account as will raise a reasonable doubt, the burden shifts to the state of proving that the account is untrue, but that the jury, being the judges of its credibility, have the right to convict even in the absence of any direct testimony to show the falsity of the defendant's explanation.

In a later case, Bargesser v. State, 95 Fla. 401, 116 So. 11, where this principle was reiterated, we held that conviction could rest upon the unexplained possession alone, when the jury did not believe the defendant's story. We are of the opinion that this is a typical case for the application of this rule, and we can easily understand the conclusion of the jury that the defendant's account was not credible, or even plaus-

ible, and was insufficient to raise in their minds a reasonable doubt that the property which he was found to possess was actually stolen by him. By his own words he knew that the watch had been stolen and knew its owner; yet instead of making any effort to return it, he chose to travel across the United States and to attempt to convert it into money. Both his flight from Pensacola westward and his flight in Los Angeles when the broker attempted to learn his name are but further indicia of his guilt.

We find no reason to disturb the judgment.

Affirmed.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.