160 So.2d 529 (1964)
Mike ROMANELLO, Appellant,
v.
STATE of Florida, Appellee.
No. E-106.
District Court of Appeal of Florida. First District.
February 4, 1964.
Rehearing Denied February 28, 1964.
*530 A.K. Black, Lake City, for appellant.
Richard W. Ervin, Atty. Gen., and A.G. Spicola, Jr., Asst. Atty. Gen., for appellee.
STURGIS, Chief Judge.
The appellant, Mike Romanello, was jointly indicted with one John Aaron Peacock upon a charge of breaking and entering the dwelling of another with intent to commit grand larceny. He was separately tried by jury, convicted and adjudged guilty, hence this appeal. We affirm.
Between 2:00 and 7:20 p.m. on May 8, 1962, the home of Mr. and Mrs. Ashley Holton, located 100 to 150 yards west of U.S. Highway No. 19 at a point about six miles north of Perry, Florida, was burglarized. The property taken included several thousand dollars in money, a 12-gauge shotgun, some papers, and two pillowcases.
Appellant and his co-defendant, Peacock, were apprehended in consequence of the alertness of one James Raker, a Florida Highway Patrolman who shortly prior to 7:00 p.m. on the day of the burglary first had his attention attracted to a 1958 two-door Ford convertible with a metal top due to the fact that it was traveling at a slow speed. At that time his patrol car and the Ford were both traveling southerly on said Highway No. 19 at a point near the Holton home. He noted the Ford's color as yellow and white, that it was occupied by two white males riding in the front seat, and that part of its license tag number was "14-W." He overtook and passed the Ford at a point approximately a quarter of a mile south of the Holton home and then, upon looking in his rearview mirror, noticed it make a left turn off of the highway in an easterly direction and onto a graded road and proceed across railroad tracks paralleling the highway at that point, thence continue along the graded road into a wooded area east of the Holton dwelling. The next time he noticed this car was shortly after 7:00 p.m. when, at a point about two miles further south on said highway where he had stopped a speeding car, it passed traveling in a southerly direction.
Patrolman Raker then went home to supper and returned to work at 8:24 p.m., at which time he received information that the Holton residence had been broken into. He immediately proceeded there and found Mrs. Holton who informed him that several thousand dollars and two pillowcases were missing. She described the latter as being white in color with a pink flower design at the open end. He observed that a window had been forced open and that two filing cabinets had been pried open. He returned to his patrol car and radioed the Highway Patrol Station at Perry, Florida, a description of the Ford car he had seen under the mentioned circumstances and a description of the missing pillowcases.
The next time Patrolman Raker saw the Ford car was the early morning of May 9, 1962, at Gainesville, Florida, where the appellant and Peacock were taken after being arrested by other officers of the Florida Highway Patrol. He identified it as the previously described automobile which he first saw on the highway near the Holton home. At the Florida Highway Patrol Station in Gainesville he was shown two pillowcases, later admitted in evidence as a state exhibit, which he identified as part of the burglarized property as described to him by Mrs. Holton. At that time he was also shown several thousand dollars in United States currency said to have been retrieved from the Ford car and the persons of the accused.
*531 The actual arrest was made by three officers of the Florida Highway Patrol at a point near Gainesville, Florida. Among them was patrolman C.C. Winburn who, being on duty the night of the burglary, around 9:00 p.m. received a report from the patrol station at Gainesville informing him of the robbery and describing the Ford automobile in which the robbers were believed to be and in which they actually were traveling. He was informed, inter alia, that money had been taken and was probably being carried in two pillowcases. He came upon the subject car at a point on the highway about ten miles north of Gainesville and followed it south until Florida Highway Patrol officers Beach and Clifton, whom he had notified by radio, came up behind him. He then signalled and stopped the Ford car, whereupon Romanello and Peacock emerged therefrom, the former with his hands raised. Officer Winburn then approached the Ford and saw through the window that lying on the back seat and floor thereof were two pillowcases as described to him by the radio report, together with a substantial amount of silver money. Meantime officers Beach and Clifton emerged from their patrol car and came up to the Ford, whereupon officer Winburn informed them that the Ford was the car in question. Officer Clifton then advised Romanello and Peacock that they were under arrest, and thereafter the search of the car and their persons and the seizure of the subject property that was later admitted in evidence took place. Upon arresting the defendants the officers first searched their persons to see if they had guns on them. Finding none, officer Beach then asked where the guns were and Peacock stated they were in the trunk of the car, which was opened and found therein were a shotgun, a rifle, two pistols, and a sack of tools. All these transactions took place in Romanello's presence and hearing. Upon later searching defendant Romanello at the Gainesville Highway Patrol Station, located about a quarter of a mile north of the point of arrest, there was found between $200 and $300 in United States currency in each of his shoes and a like amount in his right rear pocket.
The evidence conclusively shows that appellant was arrested prior to the search and seizure herein. In Melton v. State, 75 So.2d 291 (Fla. 1954), our Supreme Court said that the elements of an arrest consist of a purpose or intention to effect an arrest under a real or pretended authority, an actual or constructive seizure or detention of the person to be arrested by persons having present power to control the person arrested, a communication by the arresting officer to the person whose arrest is sought of a purpose or intention then and there to effect an arrest, and an understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him. Each of these elements was present and completed prior to the search and seizure in question and it was lawful, therefore, to make the same  the arrest being proper  and present its fruit in evidence.
Appellant Romanello's points on appeal are:
(1) That the said search and seizure of said Ford car and admission in evidence of the articles found therein violated his rights under Sections 12 and 22 of the Declaration of Rights of the Florida Constitution, F.S.A., and also violated his rights under the Fourth and Fifth Amendments and Section 1 of the Fourteenth Amendment of the Federal Constitution, in that the same was unreasonable and not based on probable cause.
(2) That the trial court unduly restricted counsel for appellant in his examination of witnesses at a pre-trial hearing on appellant's motion to suppress said evidence.
(3) That appellant's rights under Section 901.23, Florida Statutes, F.S.A., were violated by failure of the custodial officers to present him before a magistrate during the period between the time of his arrest on the night of May 8, 1962, until 2:00 p.m. on May 12, 1962, and that such failure rendered *532 all admissions, confessions and events transpiring during said period incompetent as evidence on the trial.
(4) That the trial court erroneously charged the jury with respect to the rule of evidence as to the effect of the failure of one found in possession of recently stolen goods to make a plausible explanation of how the same came into his possession.
(5) That the verdict is not supported by substantial competent evidence.
Appellant's first and primary contention is without merit. The facts first observed by Patrolman Raker, when considered in the light of the time and place of the robbery, were ample to produce in his mind a reasonable belief that the crime had been committed by one or more of the occupants of the Ford car, and these circumstances when communicated to other officers of the Highway Patrol were sufficient to vest in the latter lawful power without warrant for arrest to intercept the Ford car on the highway and make a positive examination of it from the exterior, as was done in this case. When on that occasion the appellant immediately emerged from the Ford with his hands raised and officer Winburn, looking from the outside of the Ford, saw a number of pieces of money scattered about on the rear seat and two pillowcases, one on the rear seat and one on the floor, there clearly was probable cause to conclude that a crime had been committed by the occupants and the officers were authorized to make the arrest and subsequent search and seizure. The use in evidence of the articles seized was not a violation of appellant's statutory or constitutional rights. Range v. State, 156 So.2d 534 (Fla. 1963); Cameron v. State, 112 So.2d 864 (Fla.App. 1959); Pflegl v. State, 93 So.2d 75 (Fla. 1957). In Range v. State, supra, Kanner, J., said:
"The contemporary trend of authority is to narrow the concept of immunity against searches and seizures where there is involved a motor vehicle utilized by one as an aid in committing a crime, whether in transporting the criminal or the fruit of the crime. This is so because of the high degree of mobility of motor vehicles, so that efforts to apprehend persons transporting contraband in them would be thwarted if no search of such vehicles could be made under any circumstances except by authority of warrants. Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790, adopted in Florida Statutes, section 933.19; Collins v. State, Fla. 1953, 65 So.2d 61; Cameron v. State, Fla.App. 1959, 112 So.2d 864; 29 Fla. Jur., Search and Seizure, section 12, pages 169-170."
At an examination of witnesses during a hearing held on appellant's motion to suppress the evidence, one of the witnesses testified that he exhibited to and asked defendant Peacock (charged by the same indictment but tried separately) about certain hats found in the Ford car. Counsel for appellant insisted that the hats be presented for use in further questioning the witness, but the state's objection thereto was sustained. A review of the record reflects that on the trial of the appellant there was no evidence of any acts or conversations concerning these hats in relation to appellant and that the hats were not proffered in evidence. Appellant's second point is without merit.
Appellant next contends that failure to take him before a committing magistrate following his arrest rendered his later statements and admissions inadmissible in evidence. The courts have consistently rebuked law enforcement officials for failure to present one accused of crime before a magistrate "without unnecessary delay" as provided by section 901.23, Florida Statutes, F.S.A. It is the rule, however, that due process of law is not violated in such instances unless it is shown that the delay in itself resulted in the confession under attack, and it will not be presumed that such *533 was the case. In the instant case appellant was arrested near Gainesville, Florida, on the night of May 8, 1962, and on the following day was transferred to the Taylor County jail at Perry, Florida, a distance of 93 miles, where he was kept in custody until 2:00 p.m. on May 12, 1962, without being carried before a committing magistrate. Appellant insists that this court should not adhere to the mentioned rule which has been consistently followed by our Supreme Court. We adhere to the rule. The following excerpt from Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037, states the position of the federal courts in applying such statutes:
"In 1943 this Court, in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, drew upon its supervisory authority over the administration of federal criminal justice to inaugurate an exclusionary practice considerably less stringent than the English. That practice requires the exclusion of any confession `made during illegal detention due to failure promptly to carry a prisoner before a committing magistrate, whether or not the "confession is the result of torture, physical or psychological * * *."' Upshaw v. United States, 335 U.S. 410, 413, 69 S.Ct. 170, 172, 93 L.Ed. 100. Its purpose is to give effect to the requirement that persons arrested be brought without unnecessary delay before a judicial officer  a safeguard which our society, like other civilized societies, has found essential to the protection of personal liberty.
"The McNabb case was an innovation which derived from our concern and responsibility for fair modes of criminal proceeding in the federal courts. The States, in the large, have not adopted a similar exclusionary principle. And although we adhere unreservedly to McNabb for federal criminal cases, we have not extended its rule to state prosecutions as a requirement of the Fourteenth Amendment." (Emphasis supplied)
There is no showing in the case on review affording a basis for exclusion from evidence of the statements made by appellant. See also Milton v. Cochran, 147 So.2d 137 (Fla. 1962); Dawson v. State, 139 So.2d 408 (Fla. 1962); Leach v. State, 132 So.2d 329 (Fla. 1961).
The trial court gave the following instruction to the jury:
"When a building has been broken and entered without the consent of the owner, and personal property is stolen therefrom, the property or some portion thereof is found in the possession of the person charged with the breaking and entering with intent to commit larceny therein, such possession, without reasonable and plausible explanation showing lawful possession of the personal property or any portion thereof may be sufficient to warrant a verdict of guilty of breaking and entering the building with intent to commit grand larceny or petit larceny therein, depending upon the value of the personal property intended to be taken. But the guilt of the accused does not follow as a presumption of law from the unexplained possession of the property recently stolen. The presumption of guilt in such a case is one which the jury may infer as a matter of fact, of which they are the sole judges when considered in connection with all the other circumstances in the particular case."
Appellant attempts to equate this instruction as requiring him to take the stand and give a reasonable explanation showing that he came into lawful possession of the stolen property. We do not construe the language of the charge as having that effect or purpose. The rule is firmly established that if a person is found to possess property recently stolen and gives a creditable account of how he came by it, the state assumes the burden of proving the account *534 to be untrue. In Ard v. State, 108 So.2d 38 (Fla. 1959), our Supreme Court held that the "explanation" of possession thus referred to is that given by the accused when he is first under duty to speak after such recently stolen property is discovered in his possession. There is no burden upon the defendant to take the stand and explain such possession at the trial, and any reference of his failure to do so is prohibited. Section 918.09, Florida Statutes, F.S.A.; Way v. State, 67 So.2d 321 (Fla. 1953). The failure to explain is a circumstance from which an inference of guilt may be derived when considered with the other facts in the case. Bargesser v. State, 95 Fla. 401, 116 So. 11 (1928). See also Tilly v. State, 21 Fla. 242 (1885), in which the defendant offered no testimony and the unexplained possession was held sufficient to support the verdict of guilty; Ferguson v. State, 157 Fla. 324, 25 So.2d 799 (1946), where conviction was upheld largely because the explanation of the defendant appeared flimsy in view of the other circumstances of the case, the explanation having been given by the accused to a deputy sheriff but the defendant not testifying. Unexplained possession of the fruits of the crime, shortly after its commission, justifies the inference that the possession is guilty possession. Such evidence is no more than prima facie evidence of guilt, but it may control if it is not seasonably explained by circumstances consistent with innocence. Herman v. United States, 5 Cir., 289 F.2d 362 (1961); Barfield v. United States, 5 Cir., 229 F.2d 936 (1956); Husten v. United States, 8 Cir., 95 F.2d 168 (1938). The challenged charge, considered in the light of all the charges given herein, is not prejudicial.
On appellant's final point, we have carefully reviewed the record and find that the evidence is sufficient to sustain the verdict of the jury.
Affirmed.
WIGGINTON and RAWLS, JJ., concur.