**STATE of Maine**

**v.**

**Clarence G. SMITH.**

Supreme Judicial Court of Maine.

Dec. 15, 1976.

Thomas E. Delahanty, II, Dist. Atty., J. Scott Davis, Asst. Dist. Atty., South Paris, for plaintiff.

Craig E. Turner, South Paris, for defendant.

Before DUFRESNE, C. J., and WERNICK, ARCHIBALD and GODFREY, JJ.

WERNICK, Justice.

Defendant Clarence G. Smith has appealed from the judgment of conviction entered in the Superior Court (Oxford County) on the verdict of a jury finding defendant guilty of having committed, on March 2, 1976, the crime of "Breaking, Entering and Larceny" (17 M.R.S.A. § 2103).

We deny the appeal.

The jury was entitled to find the following facts.

On the morning of August 14, 1975, defendant Smith asked an acquaintance, James D. Cook, to drive him in Cook's car from Rumford to Brunswick. Defendant made the request in Cook's apartment located on the third floor of a building in Rumford. There were four windows in the apartment fronting on a porch connected to ground level by an outside staircase. During the conversation defendant was in position to observe the layout of the apartment, including Cook's bedroom.

Cook refused to make the requested trip to Brunswick. Instead, driving in an opposite direction, Cook spent August 14 alone and returned at midnight to his apartment.

As he began preparations for going to bed, Cook placed sliding screens in the windows. He put his wallet, containing cash and his "Bankamericard" on the bureau at the foot of his bed, along with two sets of car keys, a watch, a ring and other cash. Cook retired at approximately 12:15, leaving a night light lit in the kitchen and the adjoining bedroom door open.

When he arose the next morning (August 15) Cook discovered that the wallet and one set of car keys were no longer on the bureau or elsewhere. Upon further investigation he noticed that one of the sliding screens was not in the same position he had placed it the previous night. Cook also discovered that his car—a 1972 Dodge Demon sport coupe, blue with white vinyl roof and bearing Maine registration plate "J D COOK"—was missing from the parking lot.

At approximately 10:30 that same morning an automobile answering the description of Cook's car entered a gas station in Topsham, Maine. The driver purchased two dollars' worth of gasoline and paid with a "Bankamericard" issued to "James Cook." Viron Hathaway, the station manager, identified defendant Smith as the driver in question. Hathaway knew defendant Smith from prior contacts and had ample opportunity, that day, to observe defendant and the vehicle at the gas station since defendant left the car at one point to accompany Hathaway inside the station.

On the afternoon of August 15 defendant was again observed with a "Bankamericard" issued to "James Cook." On this occasion, a man had entered a Lewiston bank for the purpose of securing a cash advance on the credit card. Fernand Sabourin, the branch manager, had opportunity to observe this person for several minutes while the application was processed. He later identified the person as defendant Smith. As a result of questions posed at that time by bank officials to defendant, defendant abruptly left the bank without the card or the cash advance.

Since the above evidence would warrant a jury conclusion beyond a reasonable doubt that defendant had exclusive possession of goods recently stolen, and there was other evidence authorizing the jury to conclude beyond a reasonable doubt that the theft of the goods had occurred in connection with a break and entry, the presiding Justice instructed the jury that from all such evidence the jury was authorized to infer that defendant was the person who stole the goods and also committed the breaking and entering.

One portion of the charge instructing as to this "inference" (hereinafter, as operative in this case, designated the "exclusive possession of recently stolen goods" inference) was as follows:

"[T]he law says that if a person is in the recent, exclusive possession of stolen property, . . . a jury may infer from that recent exclusive possession, *if it is unexplained,* . . . that the person who is in possession of that property exclusively did in fact steal it. If the theft was accompanied by a breaking and entering, you may further infer from the exclusive recent possession of that property *unexplained,* that the person also committed the breaking and entering. Now, this is an inference that you may draw, there is no requirement that you draw that inference . . . ." (emphasis supplied)

In another part of his charge the presiding Justice said:

"You determine whether it was alleged to have been stolen, where it was when found, how close to the occurrence it occurred, was there sufficient time for the object to have been transferred from one person to another, to another. Was the possession by the defendant explained in any way that takes it out of the area of being reasonable to assume, or to infer the fact that the crime was committed?"

Defendant attacks the jury verdict on two grounds: (1) it was unsupported by the evidence, and (2) it was tainted by the above-quoted instructions as to the "exclusive possession of recently stolen goods" inference. Defendant has properly preserved both issues for appellate review.

■ The evidence adduced was plainly sufficient to entitle the jury to believe, beyond a reasonable doubt, that defendant was guilty as charged and, therefore, nothing more need be said as to defendant's first assignment of error questioning the sufficiency of the evidence.

Defendant lays more stress, however, on his second point of appeal, and it is worthy of extended consideration.

■ Defendant maintains that the presiding Justice's instructions concerning the "exclusive possession of recently stolen goods" inference were prejudicial error because of the presiding Justice's resort to the word "unexplained" and the overall manner in which he dealt with the necessity of explanation and the legal effect of a lack of explanation. Defendant argues that the presiding Justice led the jury to believe that either: (1) the ultimate burden of proof was shifted to defendant or (2) to be acquitted defendant was obliged to come forward with evidence to show his innocence.[1]

We may note, preliminarily, that in other portions of his charge the presiding Justice gave instructions which tended to negate the potential of prejudice claimed by defendant. The presiding Justice not only instructed at length on the State's "heavy" burden of proof but also emphasized, near the end of the charge:

"And you will keep in mind, as I have said, . . .—the burden never shifts to the defendant to prove anything. The burden remains with the State in every instance to establish all the elements of the crime, and establish

1. When the State had completed its presentation of evidence, defendant had rested.

that this defendant did in fact commit this crime, and establish all of those matters beyond a reasonable doubt."

Moreover, the presiding Justice devoted other portions of his charge to the defendant's privilege not to testify as derived from the State's total obligation of proof. In connection with instructions on assessing credibility, he pointed out that neither party has a proprietary right to the evidence it adduces, saying

> "you may hear witnesses presented by the State whose testimony convinces you that the defendant is not guilty."

Finally, the presiding Justice several times referred to the necessity that the State meet its burden with proof beyond a reasonable doubt, and indeed made one such reference in the above-quoted extract concerning the "exclusive possession of recently stolen goods" inference.[2]

Prior cases establishing the propriety of the instructions here under attack have rejected claims of error premised on federal Fifth and Fourteenth Amendment constitutional grounds. The instant contentions are similarly based and seek to have us re-evaluate the subject in light of recent federal decisions.

In *Barnes v. United States,* 412 U.S. 837, 846, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973) the defendant maintained that an inference analogous to that now being considered[3] infringed defendant's federal Fifth Amendment constitutional rights against self-incri-

mination both by increasing pressure on the defendant to testify and highlighting the failure of defendant to testify should defendant see fit not to be a witness in his own behalf. Noting that the trial Judge had instructed that the defendant had a right not to take the stand and the fact of his exclusive possession of recently stolen goods could be "explained" by evidence other than defendant's own testimony, the Supreme Court of the United States rejected the argument, saying:

> "Introduction of any evidence, direct or circumstantial, tending to implicate the defendant in the alleged crime increases the pressure on him to testify. The mere massing of evidence against a defendant cannot be regarded as a violation of his privilege against self-incrimination." (p. 847 of 412 U.S. p. 2363 of 93 S.Ct.)

See also: *United States v. Gainey,* 380 U.S. 63, 70–71, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); *Turner v. United States,* 396 U.S. 398, 417–418, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *Yee Hem v. United States,* 268 U.S. 178, 183–185, 45 S.Ct. 470, 69 L.Ed. 904 (1925).

This Court took a similar view in *State v. Mosher,* Me., 270 A.2d 451, 456 (1970), albeit in dictum, concerning the "exclusive possession of recently stolen goods" inference applied, as here, to support a jury conclusion finding defendant guilty of breaking, entering and larceny. In *State v. Hilliker,* Me., 327 A.2d 860 (1974) we

---

**2.** It may be, however, that the presiding Justice failed to make clear that the inference itself is permissible only when the jury is persuaded of its accuracy beyond a reasonable doubt—the Justice having merely connected the requirement of a beyond a reasonable doubt quantum of proof to the finding of the underlying facts from which the inference may be drawn. But defendant did not adequately preserve any such claim of error for appellate scrutiny. Considering the totality of the charge, we would not say that this oversight by the presiding Justice would render the trial "fundamentally unfair", thus to require reversal despite defend-

ant's failure to save the issue. See: *State v. Pomerleau,* Me., 363 A.2d 692 (1976).

**3.** At issue in *Barnes,* as traced by the Court to ancient common law origin, was the inference, as allowable from the fact of the exclusive possession of stolen goods, that the possessor *knew* them to be stolen. Thus, *Barnes* did not squarely deal with the inference as here involved by which the exclusive possession of recently stolen goods renders the possessor the person who had *stolen* the goods (and had also committed the break and entry connected with the larceny).

decided the issue squarely, on reasoning paralleling that of the Supreme Court of the United States.

We view these cases to be precedentially controlling as to the federal Fifth-Fourteenth Amendment issues here raised by defendant, and we find the principles therein stated likewise in conformity with the Constitution of Maine. In the instant case, as in *Barnes,* there was ample explanation of defendant's right not to testify as well as clarification of the point that evidence from any source—with specific mention of the State's case as such a source—may be taken into account to benefit defendant.

Defendant, however, further attacks the presiding Justice's instruction on the more generalized federal Fourteenth Amendment grounds recently enunciated in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L. Ed.2d 508 (1975). He asserts that the presiding Justice's instructions impermissibly suggested that the State need not prove beyond a reasonable doubt "every fact necessary to constitute the crime charged."

We reject defendant's contention.

Defendant's argument, as previously mentioned, is two-pronged: (1) the presiding Justice's language impermissibly shifted the ultimate burden of proof to defendant, (2) it placed a burden on defendant to go forward with evidence—in either event violating the "spirit" of the decision in *Mullaney v. Wilbur.*

The argument fails in each of its prongs.

As we have already noted, the instructions taken as a whole made amply clear that the State bore the ultimate burden to prove beyond a reasonable doubt every fact constituting the crime and defendant's commission of it. The instructions of the

presiding Justice simply cannot be tortured, by "implication", into a statement to the contrary. We, therefore, hold that the charge complied with the mandate of *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), as amplified in *Mullaney v. Wilbur,* concerning the State's ultimate burden of proof to establish beyond a reasonable doubt "every fact necessary to constitute the crime charged."

We agree with defendant that frequently the practical effect of the "exclusive possession of recently stolen goods" inference imposes upon defendant a *de facto* burden to *produce* evidence contravening the inferred fact. *Barnes v. United States,* supra, 412 U.S. at 846, n. 11, 93 S.Ct. 2357.[4] We disagree, however, that this practical effect[5] produces a constitutional violation under *Winship* and *Mullaney v. Wilbur* principles. Indeed, the Court in *Mullaney v. Wilbur* expressly noted that its decision left undisturbed the rejection in *Barnes v. United States,* supra, of that very contention. *Mullaney v. Wilbur,* supra, 421 U.S. at 702 n. 31, 95 S.Ct. 1881. Our decisions, both before and after *Mullaney v. Wilbur,* are consistent with the view that procedural devices pressuring defendants to *produce* certain evidence—either for purposes of rebuttal, as here, or to generate an entire issue, as in *Mullaney v. Wilbur*—conform to federal constitutional requirements so long as they satisfy "due process" rationality. See: *State v. Millett,* Me., 273 A.2d 504 (1971); *State v. Inman,* Me., 350 A.2d 582 (1976); *State v. Matheson,* Me., 363 A.2d 716 (1976). Further, we find nothing in the Maine Constitution requiring a different conclusion.

We therefore hold that the portion of the presiding Justice's instructions to the jury concerned with the "exclusive possession of recently stolen goods" inference,

---

4. It is practically unlikely, though theoretically possible, that the State's evidence will itself provide "explanation" of a defendant's possession inconsistent with guilt.

5. We point out that the instant instruction in no way referred *expressly, and repeatedly,* to a burden of going forward as resting on defendant in regard to the inference, so as to create error akin to that reversed in *State v. Lebreton,* Me., 364 A.2d 645 (1976).

when read in light of the entire charge, were consistent with constitutional requirements and did not mislead the jury to defendant's prejudice.

While we thus reject defendant's attack on the instructions before us as reversible error, we include the following discussion to guide future practice.

■ The language here employed by the presiding Justice could be deemed to understate the critical point that, regardless of whether the possession be ostensibly "explained" or "unexplained", the inference authorized (but not compelled) from defendant's exclusive possession of recently stolen goods, is to be drawn by the jury *only* if the jury, on the basis of all the evidence, is satisfied beyond a reasonable doubt of the conclusion yielded by the inference.[6]

As was clarified in *United States v. Gainey,* supra, concerning an analogous "inference":

" 'Presence'[7] was one circumstance to be considered among many. Even if it found that the defendant had been present at the still, and that his presence remained *unexplained,* the jury could nonetheless acquit him *if it found that the Government had not proved his guilt beyond a reasonable doubt."* (p. 70 of 380, U.S., p. 759 of 85 S.Ct.) (footnote and emphasis supplied)

Conversely, even should an "explanation" appear in the evidence, the existence of an explanation does not *require* an acquittal should the jury be justified in concluding beyond a reasonable doubt, in light of all the evidence and despite the explanation, that defendant is guilty.

Here—although in a manner which was not fatally defective—the presiding Jus-

tice's discussion of the "exclusive possession of recently stolen goods" inference mentioned the word "unexplained" and did not sufficiently relate it to the ultimately controlling test of proof beyond a reasonable doubt.

The presiding Justice instructed, for example, that:

"If the theft was accompanied by a breaking and entering, you may . . . infer from the exclusive recent possession of that property *unexplained,* that the person . . . committed the breaking and entering." (emphasis supplied)

As thus used by the presiding Justice, the word "unexplained" performs no function and could be misleading. It gives no hint of the jury's prerogative to acquit even though explanation be absent, or of the jury's concomitant prerogative to convict notwithstanding the presence of evidence of explanation.

The presiding Justice later elaborated on the effect of explanatory testimony, saying:

"If . . . [the possession] is explained, . . .—and if that explanation is contrary to the inference that he stole it, obviously it would be improper for you to draw the inference of theft, if the explanation of how it came into the person's hand is a logical one that is based upon some other method of possession. . . . It's your determination, you elect to apply this inference or not in your judgment and your best determination of the facts in this case."

While we emphasize that we are satisfied that in this case the above extract did not mislead the jury to the prejudice of

6. See n. 2, supra.

7. The inference in the *Gainey* case, then codified as 26 U.S.C. § 5601(b)(1), au-

,thorized conviction of possession and operation of an illegal still based on proof of presence at the site.

defendant,[8] especially in light of the instructions as a whole, we point out that this recital of the effect of "explanation" evidence again misses the mark. In this particular instance, the language fails to refer to the jury's prerogative to reject the explanation should the jury, notwithstanding the explanation, have warrant to be convinced of guilt beyond a reasonable doubt.

■ We suggest that in future instructions concerning the "exclusive possession of recently stolen goods" inference the presiding Justice should avoid, *as a matter of usual course,* the use of the words "unexplained" or "explained." If in a particular proceeding evidence of explanation is adduced (from whatever source) and, in light of the existence of such evidence, the presiding Justice deems it appropriate to refer to the explanatory circumstances, it is his prerogative to do so. He must make plain, however, that in evaluating the explanation evidence or the "exclusive possession of recently stolen goods" inference itself—the jury is controlled by the overriding criterion that the jury may find defendant guilty only if it is satisfied beyond a reasonable doubt of the existence of all the facts constituting the crime charged.

The entry is:

*Appeal denied.*

All Justices concurring.

POMEROY, J., did not sit.

DELAHANTY, J., did not sit.

8. In our view any juror confusion arising from this portion of the charge would have tended to favor defendant.