**STATE of Maine**

v.

**Eugene HALL.**

Supreme Judicial Court of Maine.

March 30, 1978.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Asst. Dist. Atty. (orally), Portland, for plaintiff.

Cushman D. Anthony (orally), Portland, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, DELAHANTY and GODFREY, JJ.

DUFRESNE, Active Retired Justice.[1]

Indicted for larceny in the nighttime on January 9, 1976 in the dwelling house of

---

1. Mr. Justice Dufresne sat at oral argument and participated in consultation while he was Chief Justice, and, on order of his successor, Mr. Chief Justice McKusick, was empowered and authorized to continue his participation in the case in his capacity of Active Retired Justice.

Robert and Valada DeGrasse at 113 Woodfield Road in Portland,[2] Eugene Hall (the defendant) was convicted of said offense on June 3, 1976 by jury verdict in the Superior Court of Cumberland County. He appeals from the ensuing judgment, claiming reversible error on the part of the presiding Justice in denying his motions for judgment of acquittal and for a new trial pursuant to Rules 29(a) and (b) and 33 respectively. We deny the appeal.

■ Motions for acquittal and for a new trial, when, as in the instant case, they are based upon the insufficiency of the evidence to support a jury verdict that the defendant is guilty of the offense charged beyond a reasonable doubt, are interchangeable procedural mechanisms to test the conviction. *State v. Tomer*, Me., 304 A.2d 80, 85 (1973); *State v. O'Clair*, Me., 292 A.2d 186, 196 (1972); *State v. McKrackern*, 141 Me. 194, 197, 41 A.2d 817, 818 (1945). They reach the same result by posing identical questions.

That query on appeal is, whether, in view of all the evidence in the case, the jury was warranted in believing beyond a reasonable doubt that the accused was guilty of the criminal accusation against him. *State v. O'Clair*, supra; *State v. Goldman*, Me., 281 A.2d 8, 12 (1971).

A review of the record presents the following factual evidence upon which the jury was entitled to conclude that the defendant was guilty as charged beyond a reasonable doubt.

On January 9, 1976 in late afternoon Mrs. DeGrasse left her home in Portland for a dinner engagement with her husband in the evening and, so she testified, all doors to the dwelling and the garage were locked and all windows were closed at the time of her leaving. On their return shortly before midnight, they discovered that their home and garage had been broken into, their Buick automobile gone and several of their possessions missing, including Mr. DeGrasse's distinctive stereo set and equipment which comprised teakwood speakers custom-made for him in Taiwan by cabinet makers of the area.

The electric digital clock, which had adorned the television set in its usual setting and had provided the couple with the time of day or night previously, now was on the floor unplugged and inoperative. The thieves had left their time card showing 8:28 p. m.

Several weeks later, after receiving information concerning the location of the property stolen at the DeGrasse residence, two Portland detectives visited the home of one Richard Charles Parker, viewed the stereo equipment which he had set up in his cellar, and, after informing Mr. Parker that the unit was stolen property, removed the same to police headquarters where Mr. DeGrasse later identified it as the property stolen from his home on January 9, 1976.

Mr. Parker, testifying as a State witness, said that on the morning of either the 10th or 11th of January, 1976 the defendant came to his home before he left to go to work, inquiring of Mr. Parker whether he was interested in buying a stereo. Mr. Parker, who used to drop by the defendant's sister's house while befriending her, did drop over that very evening to have a look at the stereo. The defendant was there with his brother, Robert, and another unidentified person. Parker made the purchase for three hundred ($300.00) dollars, paying one hundred and fifty ($150.00) dollars that evening and the balance the next day when the defendant and his brother were at the Parker residence to collect.

The defendant took the stand in his own defense and denied any part in the larceny from the DeGrasse residence. His only involvement, so he maintained under oath,

2. 17 M.R.S.A. § 2103 (as it appeared prior to the effective date of the Maine Criminal Code) provided in pertinent part as follows:

"Whoever, without breaking, commits larceny in the nighttime in a dwelling house or building adjoining and occupied therewith, . . . and commits larceny therein, shall be punished . . . ." Section 2103 was repealed by Public Laws, 1975, c. 499, § 11, and substituted by 17-A M.R.S.A., §§ 401, 402, effective May 1, 1976.

was to arrange the subsequent sale of the stolen stereo equipment to Mr. Parker. Hall's testimony may be summarized as follows:

On the evening of January 9, 1976 he was at his sister's apartment when his brother Robert and another individual came over with a stereo set and other items. Assuming the goods were stolen, the defendant claims [but Parker gave a contrary version in important details which are underscored] that, following a conversation with his brother, he telephoned Richard Parker to inform him that his brother had a stereo for sale and that it was "hot." Parker did come to his sister's place the next evening and paid his brother an initial payment of one hundred and fifty ($150.00) dollars. He said that he and his brother did drive to Parker's residence to collect the second payment of one hundred and fifty ($150.00) dollars. Disclaiming any interest in receiving an award for his services, Hall accepted from his brother a twenty-five ($25.00) dollar bonus out of each of the two instalment payments.

The defendant concedes that, under Maine law, a jury as factfinders have a right to infer as a fact, that a person found in exclusive possession of recently stolen goods is guilty of the theft of such property (*State v. Poulin*, Me., 277 A.2d 493 (1971)), and that, if the goods were stolen in the course of a burglary, they may also extend the inference to include guilt in the burglary as against such person. *State v. Saba*, 139 Me. 153, 27 A.2d 813 (1942).

■ The rule requires, however, that, before the inference may come into play, independent evidence must be adduced justifying a rational conclusion beyond a reasonable doubt that the alleged stolen goods were in fact recently stolen and, if involved, that in fact the theft had occurred in a recent burglary. *State v. Gleason*, Me., 359 A.2d 308 (1976); *State v. Bickford*, Me., 308 A.2d 561 (1973).

■ The same rule is applicable in a jury-waived case, where the presiding justice is the factfinder. *State v. Reed*, Me., 347 A.2d 123 (1975).

■ We have in mind, also, that the rule, which permits the factual inference of theft or burglary and theft from the exclusive possession of property independently proven, beyond a reasonable doubt to have been recently stolen or taken in a recent burglary, is applicable in cases where the accused is proven to be in joint possession with another. The exclusive possession contemplated by the rule is satisfied by proof of possession by one of two or more persons shown to have acted in concert and to have been participants in the theft or burglary, the possession of one being the possession of all. *State v. Gove*, Me., 289 A.2d 679 (1972).

The defendant, however, contends that, when an accused as in this case presents a "reasonable" explanation of his possession of recently stolen property, the rule is inapplicable and the jury has no right to draw the incriminatory inference, unless the State introduces evidence tending to disprove the proffered explanation. We disagree.

■ The explanation given at trial by an accused respecting his exclusive possession of recently stolen property is, like all other matters of fact, merely evidence for the consideration of the jury to be weighed by them with all the other evidence in the case in determining whether, notwithstanding the inference that may be drawn from the exclusive possession of recently stolen goods, the given explanation raises a reasonable doubt of the defendant's guilt. This Court did say in *State v. Poulin*, supra, 277 A.2d at page 500:

"[J]uries should be told that as factfinders they have a right to draw reasonable inferences from facts proven beyond a reasonable doubt, that they have a right to infer as a fact a person having recent and exclusive possession of stolen goods is the thief unless upon all the evidence appearing in the case there arises a reasonable doubt as to the validity of the inference." (the first underscoring in original; the second is ours).

Thus, the jury, being the judges of the defendant's credibility and of the plausibili-

ty of his explanation, have the right to convict despite the absence of any direct testimony to show the falsity of the defendant's explanation, provided they are satisfied from the totality of the evidence of the defendant's guilt beyond a reasonable doubt. *Shaw v. State*, 281 A.2d 610 (Del. Supr., 1971); *Ferguson v. State*, 157 Fla. 324, 25 So.2d 799 (1946).

This Court did settle the issue in *State v. Smith*, Me., 366 A.2d 865 (1976), where we said:

> "[R]egardless of whether the possession be ostensibly 'explained' or 'unexplained,' the inference authorized (but not compelled) from defendant's exclusive possession of recently stolen goods, is to be drawn by the jury *only* if the jury, on the basis of all the evidence, is satisfied beyond a reasonable doubt of the conclusion yielded by the inference." (Emphasis in original)

> \* \* \* \* \* \*

> "Conversely, even should an 'explanation' appear in the evidence, the existence of an explanation does not *require* an acquittal should the jury be justified in concluding beyond a reasonable doubt, in light of all the evidence and despite the explanation, that defendant is guilty." (Emphasis again in original)

Whether the defendant's explanation with regard to his involvement with the recently stolen property and his possession thereof, though standing uncontradicted by the State, was sufficient to justify his acquittal, was a question for the jury. *Evans v. State*, 246 Ala. 328, 22 So.2d 98 (1945). The jury was entitled to disbelieve it and draw an inference unfavorable to him based on his possession. *State v. Cobb*, 444 S.W.2d 408, 414 (Mo.1969). See also *State v. Langley*, Me., 242 A.2d 688, 689 (1968); *State v. Lizotte*, Me., 230 A.2d 414, 418 (1967).

The evidence in its totality was sufficient to warrant the jury in believing beyond a reasonable doubt that the defendant was an active participant in the theft at the home of Mr. and Mrs. DeGrasse. The presiding Justice was not in error, when he denied the motions for judgment of acquittal and for a new trial.

In reviewing the evidence in order to determine whether there was sufficient relevant evidence from which the jury could have properly concluded that the defendant was guilty beyond a reasonable doubt (*State v. Call*, Me., 322 A.2d 64 (1974)), and approaching the issue from the standpoint most favorable to the State by assuming the truth of the evidence offered by the prosecution (*State v. Matheson*, Me., 363 A.2d 716 (1976)), the presiding Justice could see that the Jury had many factual matters which they could have taken into consideration in finding the defendant guilty beyond a reasonable doubt.

First, the forceful nighttime entry in the DeGrasse home and the theft of the stereo on January 9, 1976 were factual realities which no rational jury could reject. Then, in evaluating the defendant's proffered explanation of his connection with the raided apartment and the stolen goods, the jury, so the presiding Justice could have concluded, may have been influenced in disbelieving the same from the total lack of corroboration of such post-factum exculpatory version of the defendant's role in the criminal venture. Indeed, neither his brother, nor his sister, nor the third person in the sister's apartment on the evening of the deal with Parker at the time the first moneys were paid toward the stereo was a witness in support of the defendant's testimonial assertions. Having sized up the witnesses at trial, the jury may have decided to believe Mr. Parker who had testified that he was buying from the defendant and his brother, even though he could not remember in whose hand he put the money. Moreover, the jury may have reasoned that the defendant's concession of personal profit from the sale to Parker and his presence at the Parker residence on the occasion of the second instalment payment pointed more to complicity in the burglary, rather than to the conduct of a person merely acting as a broker in the disposal of the fruits of the burglary. Hall's credibility was also questionable for his inability to remember the third party in the affair.

The question of whether the explanation respecting the possession of property recently stolen is reasonable and sufficient to raise a reasonable doubt as to the guilt of the accused is ordinarily a question of fact for the jury to decide. If, after a full, fair, and impartial consideration of all of the evidence, reasonable minds may differ and arrive at different conclusions with regard to the reasonableness and persuasiveness of the exculpatory explication, the finding of the jury must control. The presiding Justice in so deciding was not in error. See *State v. Gurr*, 40 Utah 162, 120 P. 209, 211 (1911).

The entry will be

Appeal denied.

Judgment affirmed.

ARCHIBALD, J., did not sit.