**STATE of Maine**

v.

**Kenneth SALISBURY.**

Supreme Judicial Court of Maine.

Argued May 6, 1980.

Decided July 16, 1980.

David W. Crook, Dist. Atty., orally, Skowhegan, for plaintiff.

James MacMichael, orally, Skowhegan, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

NICHOLS, Justice.

The central issue on this appeal is whether the evidence before the court that goods found in the Defendant's possession were "recently" stolen was sufficient to warrant the inference permitted by 17–A M.R.S.A. § 361(2)[1].

Following a jury-waived trial on September 20, 1979, in Superior Court (Somerset County), Kenneth Salisbury and Deborah Guimont were both found guilty of Class C burglary (17–A M.R.S.A. § 401) and Class E theft (17–A M.R.S.A. § 353).

The evidence adduced at trial revealed the following facts: On May 26, 1979, Eugene Goodine was the owner of a vacant house and barn located on the Ward Hill Road, Norridgewock, Maine. He lived in a trailer about 200 yards away. An unpaved road, the so-called "Woods Road", ran from the Ward Hill Road, past the old house and barn and into a wooded area behind. The Woods Road was at the time overgrown with grass and brush, but had in the past apparently connected the Ward Hill Road to the Walker Road, in Norridgewock.

On the date in question, while Goodine was working outside near his trailer, he heard the sound of a racing automobile engine. Investigating, he found the Defendant, Kenneth Salisbury, and Deborah Guimont in a white panel van which was stuck in the mud on the Woods Road at a point about 100 yards behind the vacant house and barn. The ground was very wet as a result of a heavy 3-day rain which had stopped just hours before.

The Defendant told Goodine that he had just been "riding around." Goodine offered to call for help to get the van out of the mud. However, as he walked back up the Woods Road past the barn, he was disturbed to find fresh tire tracks on the rain-soaked grass leading directly up to the barn door. He decided to call the police.

Officer Terry L. Warren of the Norridgewock Police Department responded. Goodine and Officer Warren discovered that the plywood on the window of the vacant house had been pried off and was hanging loosely, and the door which had been nailed shut was pried open. In spite of the 3-day rain, the floor area inside the window and door were dry. There were footprints in the grass between the buildings; fresh tire tracks led from the tar road directly to the barn, and from there directly down to the white panel van.

The Defendant consented to a search of the van. There, Officer Warren found in a heap several items belonging to Goodine, including several feet of hot water pipe, a bowling bag with Goodine's name tag on it, a brass planter, eight plastic glasses, several feet of copper pipe, and a magazine rack. In sum, the items were valued at approximately $5.00. All of the items, except the heavy copper pipe and the plastic glasses, had been in the attic of the ell attached to the house. The copper pipe had been in the barn, and the plastic glasses had been in the bathroom of the house. Aside from the glasses in the bathroom, the house was completely unfurnished. Goodine himself had carried the copper pipe into the barn two weeks earlier. He had had occasion to notice the bowling bag one month before, but he could not specify exactly when he had last seen the other items, since he did not make a habit of checking the house daily.

The Defendant did not testify at the trial. However, Deborah Guimont testified in her defense, denying that she or the Defendant ever entered Goodine's house or barn. She attempted to explain their possession of the goods by claiming that she and the Defendant had been taking a load of junk to a junk yard in Madison, when they spotted an abandoned automobile at the edge of the

1. Section 361(2) provides:

Proof that the defendant was in exclusive possession of property that had *recently* been taken under circumstances constituting a violation of this chapter or of chapter 27 shall give rise to a presumption that the defendant is guilty of the theft or robbery of the property, as the case may be, and proof that the theft or robbery occurred under circumstances constituting a violation of section 401 also shall give rise to a presumption that the defendant in exclusive possession of property *recently* so taken is guilty of the burglary (emphasis added).

woods behind Goodine's house. They had backed the van down the Woods Road to inspect the abandoned automobile and became stuck in the mud. When they got out of the van to forage for whatever they could find to use as traction under the tires, they had just picked up the allegedly stolen items lying about in the field to sell as more junk. She as unable to explain, however, why, in spite of the fact that the field must have been very wet following the 3-day rain, the items found in the van were completely dry.

On the basis of this evidence, the presiding justice found both the Defendant and Deborah Guimont guilty of burglary and theft. In so ruling, he made the following specific findings:

> The Defendants admitted—or one of the Defendants admitted that they were there on the day in question, and the articles mentioned in the indictment, except one, were inside of their van. Certainly the State has produced enough evidence, including the tire tracks and the testimony concerning them, and the footprints, justifies an inference of guilt by being in possession of recently stolen property . . . Deborah Guimont's explanation is without any sound probative value; it doesn't make sense to me.

From the judgment of guilty, the Defendant, Kenneth Salisbury, has brought his appeal here, challenging the sufficiency of the evidence against him.

■ The pertinent provision of the Maine Criminal Code, 17–A M.R.S.A. § 361(2), codified rules which were already law in Maine before the enactment of that Code. *See* 1975 Comment to § 361(2) (Supp.1979). Thus, the inference, which arises from a defendant's being found in exclusive possession [2] of particular goods, is justified only if the State has shown, by evidence independent of the defendant's exclusive posses-

sion, that a recent theft of those goods has occurred; and, if the independent evidence shows that the goods were stolen in the course of a burglary, the inference may be extended to include guilt of the burglary.[3]

In the case before us, the Defendant neither contests the fact that the goods found in his exclusive possession were stolen from Eugene Goodine's house and barn, nor does he challenge the evidence tending to show that the buildings were broken into. He asserts, however, that the presiding justice erred in inferring guilt on the basis of § 361(2), because the State failed to show by independent evidence that the goods were in fact "recently" stolen.

The essence of the Defendant's claim is that once Deborah Guimont offered an explanation of her and the Defendant's possession of the stolen goods which was consistent with innocence, the presiding justice, as the factfinder had no right to draw the incriminating inference that she and the Defendant had recently stolen the goods, unless the State introduced evidence tending to disprove the proffered explanation. In his brief, the Defendant asserts that the State offered no evidence to show "beyond a reasonable doubt that someone other than the Defendant at some period of time as long as two weeks before the incident herein . . . did not enter the house and the barn, remove articles therefrom, and leave them scattered outside where they were found by the Defendant." In any event, claims the Defendant, Eugene Goodine's inability either to pinpoint exactly when he had last seen the goods inside the house and barn, or to testify that the house had not been broken into prior to the day in question, raises a reasonable doubt as a matter of law on the issue of "recency."

■ We quickly dispose of the Defendant's primary contention that Deborah Guimont's explanation prevented the applica-

---

2. The Defendant does not contest the fact that he was in "exclusive" possession of the property. *See State v. Mower*, Me., 407 A.2d 729, 732 (1979); *State v. King*, Me., 379 A.2d 131, 134 (1977); and *State v. Gove*, Me., 289 A.2d 679, 681 (1972).

3. We have discussed these rules in several previous cases. *See e. g., State v. Hall*, Me., 383 A.2d 663, 666 (1978); *State v. Reed*, Me., 347 A.2d 123, 126 (1975).

tion of § 361(2). We have considered and rejected this argument on at least two prior occasions. *See State v. Hall*, Me., 383 A.2d 663, 666–667 (1978); *State v. Smith*, Me., 366 A.2d 865, 870 (1976). In *Hall*, we concluded that

> [t]he explanation given at trial by an accused respecting his exclusive possession of recently stolen property is, like all other matters of fact, merely evidence for the consideration of the jury to be weighed by them with all the other evidence in the case in determining whether, notwithstanding the inference that may be drawn from the exclusive possession of recently stolen goods, the given explanation raises a reasonable doubt of the defendant's guilt.

.    .    .    .    .

> Thus, the jury, being the judges of the defendant's credibility and of the plausibility of his explanation, have the right to convict despite the absence of any direct testimony to show the falsity of the defendant's explanation, provided they are satisfied from the totality of the evidence of the defendant's guilt beyond a reasonable doubt. (citations omitted).

*State v. Hall, supra.*

Similarly, in *Smith*, we said that

> .    .    . even should an 'explanation' appear in the evidence, the existence of an explanation does not *require* an acquittal should the jury be justified in concluding beyond a reasonable doubt, in light of all the evidence and despite the explanation, that defendant is guilty. (Emphasis in original).

*State v. Smith, supra. See also, State v. Lizotte*, Me., 230 A.2d 414, 418 (1967).

The same rationale is, of course, applicable in a jury-waived case, where the presiding justice is the factfinder. The presiding justice here expressly found Deborah Guimont's testimony incredible. We, therefore, move on to consider whether the remainder of the evidence in its totality, viewed from the standpoint most favorable to the State, was sufficient to warrant the court's finding that the burglary and theft were in fact recent.

■ This case is not one in which we are asked to determine whether, in relation to the time a defendant is found in possession of stolen goods, a theft clearly shown to have occurred weeks in the past is recent.[4] From the presiding justice's ruling it is apparent that he found beyond a reasonable doubt that the crimes occurred not only recently, but on the very day the Defendant was found in possession of the goods. This finding, unless clearly erroneous, is binding.

■ That the owner of the goods could not testify with certainty that the burglary and theft occurred on the day in question avails the Defendant very little, since a defendant may properly be convicted by circumstantial evidence adequate to convince the factfinder beyond a reasonable doubt of the defendant's guilt. Here, the Defendant was found at the scene of the crimes in possession of another man's property. Signs of forced entry were evident at the door and window of that man's house. Considering the close proximity of that man's trailer to the house in question, it is extremely unlikely that the signs of burglary would have gone unnoticed. Furthermore, despite the fact that rain had been falling for the previous two or three days and up until a matter of hours before the Defendant's arrest, the window frame and floor inside the open window were dry, as were the goods found inside the van. Significantly, there were fresh footprints in the wet grass between the buildings, and tire tracks leading directly from the barn down to the Defendant's van.

With the evidence thus postured, we cannot say that the presiding justice's finding that the theft was recent was clearly erroneous. On the contrary, we conclude that there was sufficient evidence for the court's finding beyond a reasonable doubt that the Defendant was caught in the very act of

---

4. *Cf., State v. James*, Me., 312 A.2d 531, 533 (1973); *State v. Gove*, Me., 289 A.2d 679, 681 (1972).

committing the crimes with which he was charged.

The entry is:

Appeal denied.

Judgment affirmed.

All concurring.