734 So.2d 423 (1998)
Michael DELLECHIAIE, Appellant,
v.
STATE of Florida, Appellee.
No. 95-04852.
District Court of Appeal of Florida, Second District.
September 4, 1998.
James Marion Moorman, Public Defender, Bartow, and Carol J.Y. Wilson, Assistant Public Defender, Clearwater, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Tonja R. Vickers, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Judge.
Michael Dellechiaie has appealed his conviction for grand theft of a motor vehicle. We conclude that the evidence presented at trial was insufficient to support the conviction, and we reverse.
The vehicle at issue was uniquea maroon 1955 Chevrolet Bel Air that had been reconditioned and fitted with an orange 1963 Corvette 327 engine. The car's owner, Richard Lanoue, displayed it on the fenced lot of "Classy Chassis," Lanoue's antique car dealership in Pasco County. When Lanoue arrived at the lot on the morning of Thursday, October 22, 1992, he found that someone had cut the chain on the gate and had taken the Bel Air. He reported the theft to the Pasco County Sheriff's Office.
The following Monday, October 26, an anonymous telephone caller told Lanoue that he was appalled at what had been done to the car, and suggested that Lanoue check out a vanity license plate bearing the name "Tony." Using a caller identification device, Lanoue traced the call to the residence of Anthony Buccellato. A detective went to the Buccellato home, where he observed what he believed to be the distinctive engine that had been installed in the stolen Bel Air. When the detective and Lanoue returned the next day, the engine was gone. But the two found other distinctive parts from the car, including the radiator support. Buccellato was arrested, *424 and eventually he pleaded guilty to grand theft charges.
Although there was no evidence to link Michael Dellechiaie to Buccellato, the State accused Dellechiaie of participating in the theft of the Bel Air. At trial, the State attempted to prove Dellechiaie's involvement by circumstantial evidence. Reduced to its essentials, the State's case was as follows:
Late in the afternoon of Friday, October 23, the day after the theft was discovered, Dellechiaie and two other men were seen towing the Bel Air behind a pickup truck. They deposited the car in front of the home Dellechiaie shared with his parents in Hernando County. Later that night, Dellechiaie was arrested for stealing the car.
Lanoue testified that on Saturday, October 24, he received a telephone call at his dealership from a man and woman who identified themselves as Dellechiaie and his wife. The woman asked to speak to the owner of the 1955 Chevy. She and Dellechiaie were angry. Dellechiaie had just been released from jail and he sought the return of his tires and wheels, which had been affixed to the Bel Air for towing. Dellechiaie told Lanoue that he had retrieved the Bel Air's body from some woods located not far from the car dealership and the Buccellato property. When Lanoue asked Dellechiaie how he knew the car belonged to him, Dellechiaie replied that he had called car dealerships in the phone book until he came to Lanoue's.
A victim-witness coordinator for the state attorney's office testified that in November 1994 a man identifying himself as Dellechiaie telephoned her and asked to speak to the prosecutor assigned to his case. The coordinator did not make verbatim notes of the conversation, but she recalled that the man "wanted to know why the other person in this case was not charged with the same charges that he was charged with. Because it was a two-man job. And that he did not want to pay the entire restitution by himself. And that he made mention that he had driven the truck."
Finally, the State relied on Dellechiaie's possession of the recently stolen property which, in the absence of a satisfactory explanation, would give rise to an inference that he knew or should have known that the property was stolen. See § 812.022(2), Fla. Stat. (1991).
For its part, the defense contended that on the afternoon of October 23 Dellechiaie and his friend, Joe Slonski, were driving along a dirt road in the woods, when they happened upon the body of the Bel Air. The car was missing a variety of parts, including its engine, transmission, and radiator, and it had no tires or rims. Its body had been damaged, and one of its windows was cracked. The car, or what was left of it, rested near other junk that had been dumped in the area.
A man standing nearby, whom Dellechiaie and Slonski took to be the owner of the property, told them that they could have the car if they hauled it away. He wrote out a receipt: "October 23, 1992. Mr. Dellechiaie. Spring Hill, Fla. I give 1955 Chey [sic] to tow as junk from my Eden Avenue property to Michael J. Dellechiaie for no charge." Dellechiaie and Slonski obtained tires from Dellechiaie's home and from that of another friend, Eric Murphy. The men then mounted the tires on the Bel Air and towed it to Dellechiaie's house.
At the close of the State's case, and again at the close of all evidence, Dellechiaie's trial counsel moved for a judgment of acquittal. He argued, among other things, that the State's circumstantial evidence was insufficient to prove Dellechiaie's guilt. Both motions were denied, and the jury found Dellechiaie guilty.
Where, as here, the State relies solely on circumstantial evidence to prove a defendant's guilt, the jury may convict only if it finds that the evidence excludes every reasonable hypothesis of innocence *425 beyond a reasonable doubt. See State v. Law, 559 So.2d 187, 188-189 (Fla.1989). To pose that question to the jury, the State must meet its threshold burden to present competent evidence that is inconsistent with the defendant's theory of innocence. If the State does not meet that burden, the defendant is entitled to a judgment of acquittal. 559 So.2d at 188-189.
In this case, none of the State's circumstantial evidence contradicted the defense hypothesis of Dellechiaie's innocence. Moreover, the statutory inference that Dellechiaie knew the property was stolen was dispelled by Dellechiaie's explanation of how he came to possess the car. That explanation was not unreasonable, nor was it in any way refuted. To the contrary, other circumstances tended to corroborate it. See Coleman v. State, 466 So.2d 395, 397 (Fla. 2d DCA 1985). For this reason, the evidence was legally insufficient to sustain Dellechiaie's conviction.
We reverse Dellechiaie's conviction, and we remand with directions that he be discharged.
PATTERSON, J., Concurs.
GREEN, J., Dissents with opinion.
GREEN, Judge, Dissenting.
I concur that this case must be reversed, but not for reasons stated by the majority. The state attorney, in closing argument, made repeated fundamentally erroneous statements to the jury informing them they could completely accept Dellechiaie's testimony and still find him guilty as charged. These unchallenged comments may have led to an illegal verdict. Nonetheless, I do believe the jury could disbelieve Dellechiaie's statement and the testimony of his companion because the state presented evidence that disputed the defense's version of events. See State v. Law, 559 So.2d 187 (Fla.1989).
Dellechiaie did not testify but told the arresting officer that he was driving through some property and came upon the vehicle. An "old man" who owned the property, told them they could have the vehicle if they were able to tow it. The man gave him a written receipt for the vehicle.
Joseph Slonski testified that he and Dellechiaie were driving through the property for no particular reason when their way was blocked by the vehicle. An old man rode up on a bicycle. Dellechiaie and the old man had a conversation after which Dellechiaie and Slonski proceeded to obtain tires to be mounted for the tow. Neither Dellechiaie nor Slonski could identify the old man and he did not appear for trial.
An arresting officer, Deputy Sheriff Ron Booker, testified as follows:
Q. Did you tell him [Dellechiaie] you were out there investigating a theft of a motor vehicle, that being a 1955 Chevrolet?
A. Yes, I did.
Q. And what did he tell you as to how he came into possession of that motor vehicle?
A. He told me that an old man had it on his property and told him that if he could tow it out of there he could have it.
Q. Okay. And did you ask him who the old man was?
A. Yes, sir.
Q. And could he give you the old man's name?
A. No, sir.
Q. Did you ask him whether or not he had a receipt or any document that would acknowledge such a transfer?
A. I asked him to produce a receipt, title or registration, which he could not.
Q. And did you ask him if anybody was with him at the time he came into possession of this car?
A. Yes, I did.
Q. And what did he tell you?
A. Told me he would not give me the subject's name.

*426 Q. He told you someone was with him?
A. Yes.
Q. And he refused to give the subject's name?
. . . .
Q. Before you arrested him [Dellechiaie], did you try to get information as to what the man's name was that gave him the car according to him?
A. I asked him.
Q. And did you try to get the name of the fellow that he was with, that would corroborate his story that they got this car from some man in the woods?
A. I did.
Q. What did he tell you when you asked him for the name of the man who could corroborate his story?
A. He told me he would not tell me.
Q. After that, was he placed under arrest?
A. He was.
Deputy Sheriff Lenny Dennis Corlew, who accompanied Deputy Sheriff Ron Broker on the occasion of Dellechiaie's arrest testified as follows:
Q. Were you there when Deputy Broker read him his constitutional rights?
A. Yes, I was.
Q. Were you there when he asked him to produce some sort of documentation, registration or title to that vehicle?
A. Yes, I was.
Q. What did Mr. Dellechiaie respond?
A. He said he had no type of receipt or registration or anything for the vehicle.
Q. Did youwere you there when Deputy Broker asked him if hewhat did Mr. Dellechiaie say once he was read his constitutional rights?
A. He said that a gentleman in Pasco County had given him the vehicle.
Q. And was inquiry made as to who this gentleman was?
A. Yes, there was.
Q. What did Mr. Dellechiaie tell you once you asked him for the person's name?
A. He said he didn't know who he was.
Q. Did he tell you how the vehicle arrived in Hernando County?
A. Yes. He said him and a friend of his had towed it to his house.
Q. Did you ask for the friend's name?
A. Yes, we did.
Q. What did Mr. Dellechiaie say?
A. He declined to give any information on his friend.
Q. Was it after that he was placed under arrest?
A. Correct.
Dellechiaie's statement and Slonski's testimony was refuted by the true owner, Mr. Kenneth Hoglund, who testified that no one lived on the property, including himself, and he was not in the state on the day Dellechiaie claims he was told to remove the car. The note which the defense asserted was a receipt for the car did not contain the signature of Mr. Hoglund. Mr. Hoglund also testified that the road used by Dellechiaie was private with "no trespassing" signs posted and a barbed wire fence was constructed to prevent the use of the property and access to the road.
The evidence is sufficient to justify a guilty jury verdict. I would therefore reverse and remand for a new trial.