736 So.2d 77 (1999)
Gregory JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 98-1171.
District Court of Appeal of Florida, Fourth District.
June 9, 1999.
*78 Richard L. Jorandby, Public Defender, and Louis G. Carres, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Maya Saxena, Assistant Attorney General, Fort Lauderdale, for appellee.
GROSS, J.
Gregory Jackson appeals his convictions after a jury trial of grand theft of a motor vehicle and possession of a motor vehicle with an altered vehicle identification number, contrary to sections 812.014(1)(c)6 and 319.33(1)(d), Florida Statutes (1997). We reverse, because the evidence was insufficient as a matter of law to sustain the convictions.
The evidence at trial showed that at about 10:00 p.m. on August 21, 1997, Officer Baldwin of the Hollywood Police Department was driving southbound on Interstate 95. He saw a Cadillac with a Florida tag. Due to the high incidence of stolen 1970's and 1980's models of General Motors cars, the officer ran a tag check on the Cadillac. The check revealed that the tag had been reported stolen off of a 1986 red, four-door Oldsmobile. As a result, Officer Baldwin stopped the Cadillac, which made no attempt to flee.
Jackson was the driver of the car. There were three other passengers. The officer discovered that Jackson's driver's license was suspended. Jackson handed the officer a Florida identification card and a vehicle title. The vehicle identification number (VIN) on the title matched the VIN number located on the dashboard of the driver's side of the car; however, the officer noticed that the VIN number plate on the dashboard was only partially riveted in place, in a manner that was different from the way that a manufacturer usually attaches such plates to a vehicle. The rivets used on the dashboard plate were larger than those normally used by manufacturers.
Investigating further, the officer noticed other discrepancies. A safety placard containing the vehicle's information and VIN number, usually located on the driver's side front door, had been removed by some chemical agent. Due to the absence of the placard, the officer was unable to compare the VIN number on the door with that on the dashboard. The officer searched in other locations for possible identifiers of the vehicle. He looked in the trunk, but the placard on the trunk lid had been removed. He looked on the fire wall of the vehicle under the hood, but was unable to locate a VIN number.
Jackson told the officer that he had purchased the Cadillac. Jackson's name was on the title he handed to the officer. The title showed that the vehicle had been transferred to Jackson on August 17, 1997. He was cooperative with the officer. The keys fit the ignition and the steering column was not punched or stripped. There were no pry marks on the doors of the car.
Officer Baldwin placed Jackson under arrest for possession of a vehicle with an altered VIN number and for driving with a suspended driver's license. The vehicle was towed to the police department so that it could be further investigated by an auto theft detective.
The next morning, Detective Hetzel, a specialist in auto theft, took over the investigation. He testified that 1,500 cars are stolen every year in Hollywood, Florida. *79 Some are shipped overseas, others are altered and resold. There was no sign of forced entry to the Cadillac. The detective noticed that the dashboard VIN plate was loose, not "very, very secure" as they usually are. The detective determined that the VIN plate belonged to a 1983 Cadillac, not the 1986 Cadillac that had been seized from Jackson. The VIN plate was registered to Roselyn Brockington from Homestead, whom Detective Hetzel never contacted.
Detective Hetzel spent "a day or more" checking out various serial numbers on the car. On certain parts, the detective traced the numbers to an Oldsmobile. In the 1980's, Oldsmobile and Cadillac parts were interchangeable. The VIN sticker in the trunk was missing, but the detective could see adhesive where the sticker had been peeled off. The identification stickers usually on the seat belts had been removed. Also missing were the packing slips usually hidden in American cars giving a description of the car and the VIN. Finally, Detective Hetzel located the confidential number on the vehicle, consisting of the last eight numbers of the VIN and "one character up front." From this number the detective determined that the Cadillac belonged to Barbaro Perez.
Detective Hetzel opined that someone had gone through a lot of trouble to make sure that the vehicle was difficult to identify. It had taken the detective almost two days to identify the Cadillac. The state introduced no fingerprint testimony concerning prints taken from areas where the VIN number had been altered. Nor did the state offer any testimony as to how long it would have taken to have made the alterations to the vehicle that the detective observed.
Barbaro Perez testified that the Cadillac was reported stolen after his wife had discovered the car missing on August 17, 1997, a Sunday. He last saw the Cadillac on Saturday night. Perez never removed any of the VIN numbers from the car. He retrieved the car after a call from the police. Perez noticed that the ignition key had been changed, the gears did not shift properly, the brake lights did not come on when the brake pedal was pressed, and his license plate was missing.
The state rested after the testimony of Baldwin, Perez, and Hetzel. The defense moved for a judgment of acquittal based on the failure of the state to prove an intentional theft or a knowing possession of a vehicle with an altered VIN number. The motions were denied.
The defense called Nathaniel McNear, a good friend of Jackson's for ten years. McNear testified that on August 17, 1997, at about 5:00 p.m., he and Jackson were driving south on US-1 near Cutler Ridge, when they saw the Cadillac on the side of the road with "for sale" signs on the windshield and the back window. They slowly drove by because Jackson wanted to look at the car. They did not stop, since McNear was in a rush.
Later on, Jackson told McNear that he was going to go back and look at the car. Jackson said that he wanted to buy the car and asked to borrow $400. When McNear said he did not have the money to lend, Jackson said that he was going to ask his sister and his father for the money. The next day, Jackson asked McNear if he could borrow McNear's license plate, because he was going to pick up the car and did not want to get pulled over for not having a tag. McNear let Jackson borrow the tag, which originally belonged to a 1986 Oldsmobile. McNear testified that he had sold the Oldsmobile, but kept the tag; he wrote the tag number on a piece of cardboard, and put it on the car. The Oldsmobile was later stolen from the buyer.
Two or three days after first seeing the car, Jackson brought the car to McNear's house, and gave no indication that the car was stolen. McNear did not look for VIN numbers or stickers on the car. He did not notice any pry marks and saw that the keys were in the ignition. Other than *80 cracked seats, he did not see anything wrong with the car. On cross-examination, McNear conceded that he did not see Jackson actually purchase the car or sign the title which was eventually given to Officer Baldwin.
After the defense rested, Jackson renewed his motion for judgment of acquittal, which was denied. As part of the instruction to the jury, the trial court read that part of the standard instruction based on section 812.022(2), Florida Statutes (1997) which provides:
Proof of possession of recently stolen property, unless satisfactorily explained, gives rise to an inference that the person in possession of the property knew or should have known that the property had been stolen.
Fla. Std. Jury Instr. (Crim.) p. 212. The jury found Jackson guilty of grand theft, possession of a motor vehicle with an altered vehicle identification number, and driving with a suspended license. The jury found Jackson not guilty of petit theft, a charge based on the theft of McNear's license plate.
Jackson points out that as to the state of mind element of both felonies, the evidence was circumstantial. To prove grand theft under section 812.014(1)(c)6, the state must prove that the defendant knowingly obtained or used the property of another with the intent to either temporarily or permanently deprive the other person of a right to the property or a benefit from the property or to appropriate the property to his own use or the use of another person not entitled to its use. See §§ 812.014(1)(a) & (b), 812.014(2)(c), Fla. Stat. (1997). Section 319.33(1)(d), Florida Statutes (1997), makes it unlawful to "possess... a motor vehicle ... on which the motor number or vehicle identification number has been, destroyed, removed, covered, altered, or defaced, with knowledge of such destruction, removal, covering, alteration, or defacement." (Italics supplied). Jackson asserts that because the circumstantial evidence of his guilty knowledge was not inconsistent with a reasonable hypothesis of innocence, his felony convictions should be reversed.

I
In State v. Law, 559 So.2d 187, 188 (Fla.1989), the supreme court set forth the standard of review for circumstantial evidence cases:
A special standard of review of the sufficiency of the evidence applies when a conviction is wholly based on circumstantial evidence. Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence. The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, we will not reverse.
(Citations omitted). It is the trial judge's job to review the evidence to determine the "presence or absence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences." Id. at 189. The judge's analysis must view the evidence "in the light most favorable to the state." Id. The state is not required to conclusively rebut every possible variation of events that might be inferred from the evidence, but "only to introduce competent evidence which is inconsistent with the defendant's theory of events." Id.
The rationale behind the circumstantial evidence rule was well articulated by Judge Hubbart in the appendix to Jones v. State, 466 So.2d 301, 326 (Fla. 3d DCA 1985), approved, 485 So.2d 1283 (Fla. 1986):[1]

*81 The finger of suspicion implicit in circumstantial evidence is a long one and may implicate both the innocent and guilty alike. Persons caught in a web of circumstances may often appear guilty upon first impression, but in fact be entirely innocent as surface appearances are frequently deceiving. A person ought not be convicted of a crime, it is thought, and his freedom taken from him based on such tenuous and ambiguous evidence. To avoid, then, convicting entirely innocent people based on suspicion and innuendo, the law has long demanded a high standard of proof when reviewing convictions based entirely on circumstantial evidence. Given our long-standing commitment to the ideal of individual freedom, this result seems both fair and reasonable. As has been often stated, "[o]ur responsibility in such circumstanceshuman liberty being involvedis doubly great," Head v. State, 62 So.2d 41, 42 (Fla.1952), because "[t]he cloak of liberty and freedom is far too precious a garment to be trampled in the dust of mere inference compounded." Harrison v. State, 104 So.2d 391, 395 (Fla. 1st DCA 1958).
The state relies on the statutory inference of section 812.022(2), to argue that its evidence was sufficient to support a conviction. The inference deals with a specific type of circumstantial evidence. The state contends that once it proves that a defendant possessed a recently stolen item, the statute allows the inference that the person in possession of the property knew or should have known that the property was stolen; to mute the probative value of the statutory inference, the accused must offer a satisfactory explanation for having possessed the stolen item. The state cites to language in State v. Carroll, 404 So.2d 844, 845 (Fla. 5th DCA 1981), that it is "up to the trier of the facts, not the judge on summary judgment, to determine the truth" of the defendant's innocent explanation of his possession of stolen items. See Patten v. State, 492 So.2d 748, 750 (Fla. 2d DCA 1986) ("The question as to whether appellant knew the items were stolen is a jury question once the state proves the appellant was in possession of the recently stolen property."). The state's line of authority is deeply entrenched in Florida legal history. See II infra.
Jackson bases his argument on a line of cases beginning with A.R. v. State, 393 So.2d 1174 (Fla. 3d DCA 1981), which have reversed convictions based on the statutory inference alone, where a defendant's "unrefuted," reasonable, and innocent explanation for possessing stolen goods renders the evidence insufficient as a matter of law to establish guilt. See Dellechiaie v. State, 23 Fla. L. Weekly D 2052, 734 So.2d 423 (Fla. 2d DCA 1998); E.L.S. v. State, 547 So.2d 298 (Fla. 3d DCA 1989); M.M. v. State, 547 So.2d 139 (Fla. 1st DCA 1989); B.P. v. State, 515 So.2d 423 (Fla. 3d DCA 1987); Valdez v. State, 492 So.2d 750 (Fla. 3d DCA 1986); J.J. v. State, 463 So.2d 1168 (Fla. 3d DCA 1984); R.M. v. State, 450 So.2d 897 (Fla. 3d DCA 1984); R.D.S. v. State, 446 So.2d 1181 (Fla. 3d DCA 1984); McNeil v. State, 433 So.2d 1294 (Fla. 1st DCA 1983); R.M. v. State, 412 So.2d 44 (Fla. 3d DCA 1982); R.A.L. v. State, 402 So.2d 1337 (Fla. 3d DCA 1981).

II
At first blush, it is difficult to reconcile the two lines of cases relied upon by the parties. To properly determine how the section 812.022(2) inference should operate, it is necessary to place the statute in its historical context.
Section 812.022(2) was enacted by the 1977 legislature as part of the overall revision of the criminal statutes relating to theft and stolen property. See Ch. 77-342, Laws of Fla. However, the inference was not new to Florida law. An identical inference had been part of Florida common law since the nineteenth century. In McDonald v. State, 56 Fla. 74, 47 So. 485, 486 (1908), the supreme court stated the general rule that a "verdict of guilty of larceny *82 may be found from the unexplained possession of goods recently stolen." The court then explained those circumstances where a defendant's reasonable explanation might rebut the evidentiary inference:
Where a party who is found in possession of goods recently stolen directly gives a reasonable and credible account of how he came into such possession, or such an account as will raise a reasonable doubt in the minds of the jury, then it becomes the duty of the state to prove that such account is untrue, otherwise he should be acquitted. The account given must be not only reasonable, but it must be credible, or enough so to raise a reasonable doubt in the minds of the jury, who are the judges of its reasonableness and probability, as well as of its credibility. The account given may be reasonable and highly plausible, yet, if the jury do not believe it, they have the right to convict upon the evidence furnished by the possession of the stolen goods alone, even though the state does not put in any evidence directly to prove the falsity of the account given.
Id. The court emphasized that the unexplained possession of recently stolen property did not create a presumption of law, but was an evidentiary presumption that the jury might "infer as a matter of fact, of which they are the sole judges, to be considered in connection with all the other circumstances of each particular case." Id. McDonald is in accord with the law set forth in three cases from the 19th century: Bellamy v. State, 35 Fla. 242, 17 So. 560 (1895), Leslie v. State, 35 Fla. 171, 17 So. 555, 556 (1895), and Young v. State, 24 Fla. 147, 3 So. 881 (1888).
Florida cases following McDonald demonstrate two truisms concerning the application of the common law inference: a larceny conviction can be based on the unexplained possession of goods recently stolen, without more, and the finder of fact is the sole judge of the believability and reasonableness of a defendant's explanation of his possession. See, e.g., Ferguson v. State, 157 Fla. 324, 25 So.2d 799 (1946); Bargesser v. State, 95 Fla. 401, 116 So. 11 (1928); Tucker v. State, 86 Fla. 36, 96 So. 10 (1923); Kirkland v. State, 82 Fla. 118, 89 So. 356 (1921). In addition to evaluating the credibility of a defendant's explanation for possessing stolen property in cases involving the common law inference, the finder of fact must also determine whether the property at issue was "recently" stolen, a finding which is necessary for the inference of guilty knowledge to be justified. See S.B. v. State, 555 So.2d 407 (Fla. 3d DCA 1989); State v. Grimmage, 522 So.2d 523 (Fla. 2d DCA 1988) (involving five days between theft and recovery); N.C. v. State, 478 So.2d 1142 (Fla. 1st DCA 1985); Burroughs v. State, 221 So.2d 159 (Fla. 2d DCA 1969). The state's argument is based on the McDonald line of cases.

III
Over time, Florida common law developed a different rule of circumstantial evidence in cases where the charge was receiving stolen goods and not larceny. See, e.g., Fisk v. State, 138 Fla. 815, 190 So. 10 (1939). In State v. Graham, 238 So.2d 618, 621 (Fla.1970), the supreme court clarified whether the unexplained possession of recently stolen property, and nothing more, was sufficient to support a conviction for buying, receiving, or aiding in the concealment of stolen property. The court held that
[p]roof of mere naked possession of property recently stolen, not aided by other proof that the accused received it knowing it to have been stolen, is not sufficient to show guilty knowledge. Proof of possession should be coupled with evidence of unusual manner of acquisition, attempts at concealment, contradictory statements, the fact that the goods were being sold at less than their value, possession of other stolen property, or other incriminating evidence and circumstances.
Id. at 621 (citation omitted). For the type of charges to which it applies, the rule in *83 Graham represents a sharp departure from that of McDonald. While clearly stating the common law rule regarding the inference to be drawn from possession of recently stolen property in receiving stolen property cases, the supreme court observed that "a different rule pertains in larceny cases," thus reaffirming the holdings of McDonald, Young, and Leslie.

IV
One of the significant changes to the law made by the 1977 amendments to Chapter 812 was the broadening of the definition of the type of conduct that constitutes theft under section 812.014(1), Florida Statutes (1997). As a result of the 1977 changes, the "crime of theft [could] be committed in several ways, one of which happens to be by acts formerly prosecuted as `receiving stolen property'" under sections 812.031, Florida Statutes (1975), and 811.16, Florida Statutes (1955). Colvin v. State, 445 So.2d 657, 660 (Fla. 1st DCA 1984); see State v. Lewis, 364 So.2d 1223 (Fla.1978); Brewer v. State, 413 So.2d 1217, 1219 (Fla. 5th DCA 1982). As the first district observed in Colvin,
[u]nder the present theft statute, one who buys stolen property with knowledge of its stolen character is just as guilty of theft as the person who physically removed the property from the owner's possession. As the fifth district noted in Brewer v. State, 413 So.2d at 1219, "how the property of another is acquired is no longer important." The statute in effect classifies the knowing buyer of stolen property as a principal, or participant in the crime of theft itself, rather than as an accessory after the fact. That the legislature has the authority to reclassify and define offenses and offenders does not seem subject to question.
445 So.2d at 660. It is clear that the legislature recognized that it had expanded the definition of theft. Section 812.025, Florida Statutes (1997), provides that convictions for theft and dealing in stolen property are in the alternative; the statute prohibits convictions for both offenses, when they relate to the same stolen property and the same defendant. See T.S.R. v. State, 596 So.2d 766, 767 (Fla. 5th DCA 1992).
A critical issue in this case is whether the legislature's enactment of section 812.022(2) in 1977 should be read to have adopted the common law rule of McDonald or that of Graham for Chapter 812 theft cases. Section 812.022(2) adopts the terminology of the common law rule. A well established principle of statutory construction is that words and phrases having well-defined meanings in the common law are interpreted as having the same meanings when used in statutes dealing with the same or similar subject matter. See Savino v. State, 447 So.2d 411, 413 n. 3 (Fla. 5th DCA 1984) (Cowart, J., concurring); Peters v. Weatherwax, 69 Haw. 21, 731 P.2d 157, 161 (1987); Harger v. Structural Servs., Inc., 121 N.M. 657, 916 P.2d 1324, 1329-30 (1996)[2]. Another rule of statutory construction is that a court will presume that a statute "was not intended to alter the common law other than by what was clearly and plainly specified in the statute." Ady v. American Honda Fin. Corp., 675 So.2d 577, 581 (Fla.1996); see Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362, 364 (Fla.1977).
Application of these rules of construction leads to the conclusion that section 812.022(2) should be read as having adopted the common law rule of Graham in Chapter 812 theft cases. In 1970, Graham stated the rule of circumstantial evidence *84 for receiving stolen property cases. In 1977, the definition of theft was expanded to include the same type of criminal conduct for which Graham had fashioned its rule. The reasons behind the supreme court's adoption of the rule in Graham are thus equally applicable to the expanded definition of theft under section 812.014. Reading section 812.022(2) in this manner is consistent with Law's statement of the standard of review in circumstantial evidence cases and with the rationale underlying that rule.
The cases upon which Jackson relies depart from the common law rule of McDonald and apply in theft cases the law applicable to receiving stolen property cases derived from Graham and Fisk. This shift in the development of the law occurred in the cases without extensive discussion or analysis. The seminal case, A.R., 393 So.2d at 1175, cites to both Graham and Fisk in holding that the state had not presented a prima facie case of guilt. The opinion does not indicate whether the criminal charges involved were for theft or receiving stolen property. The case does not discuss the facts which led to its holding. Nor does the case mention McDonald, Leslie, or any supreme court case pertaining to application of the inference in larceny cases.
The most frequently cited case in this line coming after A.R. is R.A.L., supra, which looked to Fisk and A.R. in concluding that the defendant's
unrefuted, exculpatory and not unreasonable explanation of his possession of a stolen moped that he bought it at a flea market rendered the state's case, which was based solely on the inference provided by Section 812.022(2) ... without any additional incriminating circumstances, insufficient as a matter of law to establish guilt.
402 So.2d at 1337. Like A.R., R.A.L. does not specify the precise criminal statute involved in the juvenile court. R.A.L. appears to be the first case to clearly inject the reasoning and language of Graham into section 812.022(2) analysis. Cases following R.A.L. apply that case to theft charges. See Dellechiaie, 23 Fla. L. Weekly at D2052, 734 So.2d at 423; M.M., 547 So.2d at 139-40; R.M., 450 So.2d at 898; R.D.S., 446 So.2d at 1181-82; McNeil, 433 So.2d at 1295; R.M., 412 So.2d at 45. These cases hold that where a conviction for theft was based on nothing more than the section 812.022(2) inference, then the evidence was legally insufficient to support a guilty verdict, in the face of an unrefuted, exculpatory and not unreasonable explanation offered by the accused for his possession of the goods in question.

V
In this case, the conviction was based on Jackson's possession of the stolen vehicle alone, "not aided by other proof that the accused received it knowing it to have been stolen." Graham, 238 So.2d at 621. Jackson's explanation for possession was more than only "arguably reasonable" and there was no evidence introduced by the state to place the explanation in doubt. See Coleman v. State, 466 So.2d 395, 397 (Fla. 2d DCA 1985). No evidence indicated that the Cadillac could not have been altered within 20 hours of its taking, a fact that would have made it improbable that Jackson could have seen the car for sale on Sunday, August 17. There was a VIN plate on the dashboard, the place where a person is most likely to look for one. There was no other circumstantial evidence of guilty knowledge, such as flight from the police or concealment of the car.
This case does not demonstrate the "other incriminating evidence and circumstances" under Graham that courts have found sufficient, when combined with possession of recently stolen property, to support a theft conviction. Jackson was not caught in possession of the car a very short time after it was stolen. Cf. Coleman, 466 So.2d at 396-97; S.P.L. v. State, 512 So.2d 1153 (Fla. 1st DCA 1987). The keys fit the ignition, the steering column was intact, and there were no signs of *85 forced entry to the vehicle; nothing about the condition of the car "should have placed a reasonable person on notice of the probable stolen nature of the vehicle." Periu v. State, 490 So.2d 1327, 1329 (Fla. 3d DCA 1986) (involving front windshield in "smashed up condition" combined with absence of any vehicle identification numbers); S.P.L., 512 So.2d at 1154 (concerning moped with broken ignition, missing license tag, and partially removed serial number in defendant's possession within a few hours after taking from owner); D.G. v. State, 547 So.2d 295 (Fla. 3d DCA 1989) (involving automobile that showed signs of forced entry and physical damage in defendant's possession within 24 hours after taking). Jackson was not caught in a lie while giving an improbable story. Cf. J.J. v. State, 463 So.2d 1168 (Fla. 3d DCA 1984). Jackson's trial version of his possession of the car did not conflict with his pretrial explanation. Cf. N.C., 478 So.2d at 1144; P.N. v. State, 443 So.2d 193 (Fla. 3d DCA 1983). None of the "other proof" mentioned in Graham is present in this case.
The facts of this case are much closer to those cases where defendants' unrefuted explanations of their possession of recently stolen property have been held insufficient to support a theft conviction. See Dellechiaie, 23 Fla. L. Weekly at D2052, 734 So.2d at 423 (regarding defendant who obtained car from unknown man in return for hauling it off property); E.L.S., 547 So.2d at 299 (involving driver who told defendant that truck belonged to driver's uncle); M.M., 547 So.2d at 139 (concerning defendant who borrowed motorcycle from a friend, giving friends's last name and offering to show officer where friend lived); R.M., 450 So.2d at 898 (involving defendant who borrowed vehicle from his stepfather); R.D.S., 446 So.2d at 1182 (regarding defendant who purchased moped from a boy named Rodney Middleton for $35); R.M., 412 So.2d at 45 (involving defendant who borrowed bicycle from a friend).
As to the conviction of possessing a motor vehicle with an altered identification number, we also reverse. Section 319.33(1)(d) requires that a defendant's possession be "with knowledge" of the destruction, alteration or removal of the VIN number. The section 812.022(2) inference does not extend to this charge. A person could possess a stolen vehicle, knowing that it had been stolen, without being aware that the VIN number had been altered. Possession of a recently stolen vehicle, without more, does not equate with guilty knowledge concerning the tinkering with a VIN number. There was no showing that Jackson's fingerprints appeared in those out-of-the-way places where VIN numbers on the vehicle had been altered. No other fact in evidence suggests the requisite state of mind for a section 319.33(1)(d) violation, so under Law, the evidence was insufficient as a matter of law to support the jury verdict.
REVERSED.
DELL and KLEIN, JJ., concur.
NOTES
[1] In State v. Law, 559 So.2d 187, 188 n. 1 (Fla.1989), the supreme court commended the "comprehensive review of the [circumstantial evidence] rule as it has been applied in Florida" found in Jones v. State, 466 So.2d 301 (Fla. 3d DCA 1985).
[2] Harger v. Structural Services, Inc., 121 N.M. 657, 916 P.2d 1324 (1996), and Peters v. Weatherwax, 69 Haw. 21, 731 P.2d 157, 161 (1987), rely on different volumes of the same treatise for the principle of statutory construction. Peters cites to 2A Sutherland on Statutory Construction § 50.03, at 435 (4th ed. C. Sands ed.1984). See 731 P.2d at 161. Harger cites to 2B Sutherland on Statutory Construction § 50.03, at 103 (5th ed. N. Singer ed.1992). See 916 P.2d at 1330.