NORTHCUTT, Judge.
Patrick Rivers was convicted and sentenced for multiple crimes arising from a string of car burglaries and a subsequent attempt to flee from police. He does not challenge his conviction or time-served sentence for obstructing or opposing an officer without violence, and we affirm this conviction without further comment. In his appeal of the remaining convictions we affirm in part, reverse in part, and remand for a new trial on one charge.
In addition to obstructing an officer without violence,[1] Rivers was charged with and convicted of three counts of burglary of an unoccupied conveyance,[2] one count of attempted burglary of an unoccupied conveyance,[3] two counts of grand theft,[4] one count of grand theft of a motor vehicle,[5] and fleeing to elude at high speed.[6] Rivers argues that the trial court erred in denying his motion for judgments of acquittal (JOA) on the seven burglary and theft charges. He also challenges jury instructions in regard to those charges and to the fleeing-to-elude charge.
Testimony by the State’s witnesses provided a timeline of the incidents giving rise to Rivers’ charges. At 7:00 or 7:15 a.m. on May 4, 2009, a Ford Thunderbird pulled up to a home. A man exited the car and tried to break into a truck with a crowbar, setting off the truck’s alarm. A neighbor observed these events through her window. She yelled for her husband, who ran outside, and she called 911. She saw the man climb back into the Thunderbird, which then sped away. The truck’s owner also heard the alarm and corroborated the time of the attempted break-in. He did not see anyone try to enter the truck, but later inspection showed that the truck’s door had been popped and that the lock had been pushed in.
The neighbor who saw the man with the crowbar could not identify him or anyone *250 else in the Thunderbird, which had tinted windows. She did not say whether the man she saw was the driver or a passenger. Her husband also did not say who was driving or how many people were riding in the car. But he noted its license plate number before it left. When the police arrived ten or fifteen minutes later, he gave them the tag number.
A deputy sheriff was dispatched to the scene at 7:28 a.m. She testified that law enforcement traced the tag number to the Thunderbird’s owner, who was unaware that her car had been stolen. She had last seen the car in a parking lot at 3:00 p.m. on the day before, and she had not given anyone permission to take it. Shortly after the deputy’s arrival at the scene, she issued a be-on-the-lookout report for the stolen Thunderbird.
Between 8:00 and 8:10 a.m., two women had their purses stolen from their cars, which were parked at a school. Both women had escorted their children to the school and returned to find their car windows broken and their purses missing.
At approximately 8:30 a.m., a Florida Highway Patrol trooper received a “Lo-Jack hit,” which alerted him that a stolen vehicle was within three miles of his location. Within the next minute, the trooper spied the stolen Thunderbird when it pulled out in front of him. The trooper activated his lights and siren, and he pursued the car when it failed to stop. For the next fifteen to thirty minutes, the trooper followed the stolen car. The Thunderbird went onto and off of the interstate, moving at high speed; it jumped concrete medians on the city streets; and at times, it went the wrong way against the direction of traffic. The stolen Thunderbird rear-ended one car as it exited the interstate, but it drove away from this accident. It eventually hit a second vehicle, and this crash ended the chase. The trooper saw four men jump out of the Thunderbird and run off. He noted the clothes worn by the driver, and he gave chase on foot. With the assistance of a K-9 dog, Rivers was found hiding under a tarp in a backyard shed. Another occupant of the car, Rufus McGhee, was found hiding under a mobile home. Two more young men were later identified and charged in these crimes.
After Rivers was in custody, the trooper identified him as the driver of the stolen car based on his clothing. He later identified Rivers in court as the driver. The two stolen purses were found on the rear floorboard of the Thunderbird. Of the fingerprints lifted from the stolen car, only one was identified — McGhee’s fingerprint was on the rearview mirror.
After the State rested, defense counsel argued his JOA motion, raising the issues we discuss below. The trial court denied the motion. The defense then presented testimony by McGhee and the officer who found him. Although we recount this testimony, we note that it has no bearing on the question whether the trial court properly denied Rivers’ JOA motion. “The State may not rely upon evidence presented during [appellant’s] subsequent defense to supply essential missing links in the State’s prima, facie case to support the denial of the motion for judgment of acquittal.” Wagner v. State, 421 So.2d 826, 827 (Fla. 1st DCA 1982).
When McGhee testified on behalf of Rivers, he had already been convicted of offenses arising from this episode. McGhee’s testimony contradicted the time-line established by the State’s witnesses. According to McGhee, he stole the Thunderbird by himself at around 7:00 or 7:20 a.m. He said that he alone broke into the cars at the school and stole the women’s purses, at around 7:50 or 8:00 that morn *251 ing. He then picked up his younger brother, his friend Rivers, and another friend at about 8:15 a.m. McGhee testified that he told the others that he wanted to stop by a friend’s house to pick up something. When they stopped, McGhee said he got out of the car with a screwdriver and tried to break into the truck. He fled when the alarm went off. McGhee claimed that he was driving the whole time and that law enforcement began pursuit within three to five minutes after the unsuccessful burglary of the truck. McGhee admitted in cross-examination that he had not previously said that he was the driver.
Defense counsel renewed the JOA motion, which the trial court again denied. The court then instructed the jury on the charged offenses and, ■ over objection, on the law of principals and on the inferences arising from possession of recently stolen property and from proof of stealthy entry. The jury convicted Rivers of all counts as charged: attempted burglary of the truck; two burglaries and two grand thefts related to the purses stolen from the women’s cars; a burglary and grand theft related to the stolen Thunderbird; fleeing to elude at high speed; and obstruction without violence.

I.Standard of Review on Denial of JOA Motion

We review the denial of the JOA motion de novo, taking the evidence and reasonable inferences therefrom in the light most favorable to the State. Pagan v. State, 830 So.2d 792, 803 (Fla.2002). We note that the trooper’s eyewitness testimony identifying Rivers as the driver of the car was direct evidence only of Rivers’ guilt of fleeing to elude and obstruction; on the burglary and grand theft charges, the evidence of Rivers’ guilt was entirely circumstantial. See Singleton v. State, 105 So.3d 542, 544 (Fla. 2d DCA 2012) (explaining difference between direct and circumstantial evidence of guilt: “Direct evidence is evidence which requires only the inference that what the witness said is true to prove a material fact.... Circumstantial evidence is evidence which involves an additional inference to prove the material fact .... ” (quoting Charles W. Ehrhardt, Ehrhardt’s Florida Evidence § 401.1 (2011 ed.))). For this reason, on those charges our standard of review requires that we determine whether the evidence was sufficient to exclude Rivers’ reasonable hypothesis of innocence. See State v. Law, 559 So.2d 187, 188-89 (Fla.1989). As to this issue, the State’s burden was not “to rebut conclusively every , possible variation of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant’s theory of events.” Id. at 189 (footnote and internal quotation marks omitted).

II.Attempted Burglary

On appeal, the State concedes that the evidence was insufficient to support Rivers’ conviction for attempted burglary, even as a principal. As the State notes, quoting Staten v. State, 519 So.2d 622, 624 (Fla.1988), “[i]n order to be guilty as a principal for a crime physically committed by another, one must intend that the crime be committed and do some act to assist the other person in actually committing the crime.” We agree that the State failed to introduce sufficient evidence of guilt on this charge, and we reverse the conviction for attempted burglary of the truck (count 5)...

III.Burglaries and Thefts of the Purses

The State also concedes that it failed to introduce evidence of the stolen purses’ value sufficient to support convictions for grand theft; it suggests that the convictions should be reduced to petit *252 theft. But we conclude that the evidence was insufficient to prove Rivers’ guilt for any theft or burglary involving the purses. There was no direct evidence of Rivers’ participation in these crimes, and because the circumstantial evidence failed to show that Rivers was in possession of the stolen property, the State was not entitled to inferences of guilt arising from possession of recently stolen property.
When the four men fled the Thunderbird after the chase, they left two stolen purses on the rear floorboard. The State’s evidence established that the purses were stolen about a half hour before the trooper began pursuing the Thunderbird and that Rivers was in the driver’s seat when the chase ended. But no evidence placed the Thunderbird in the vicinity of the school where the purses where stolen, and no evidence showed that Rivers even knew the purses were in the car, much less that he had dominion and control of them.
In Bronson v. State, 926 So.2d 480 (Fla. 2d DCA 2006), this court reversed a conviction under similar facts, where the evidence showed nothing more than the defendant’s mere proximity to stolen property. In that case, the investigation of a home burglary and theft led to the stop of a pickup truck that had been seen by a neighbor at the burgled residence. The truck was driven by Bronson’s father, and Bronson was a passenger. Stolen property was located in the bed of the truck, under the passenger seat, and in the driver’s door panel. A stolen television was found at the home of Bronson’s girlfriend. But the defense presented testimony from Bronson’s sister, who said that Bronson was with her all morning when the burglary occurred. She also said that the father arrived that morning in the truck, she saw some of the stolen property in the back of the truck, she saw the father leave the television, and she saw Bronson then leave in the truck with his father.
Bronson argued that the State’s evidence showed only his proximity to stolen property and that no evidence placed him at or near the scene of the crime. He further argued that the lack of evidence was not cured by the inference arising from possession of recently stolen property. This court agreed that the inference did not apply because the evidence failed to show Bronson had exclusive, even if joint, possession of the stolen items.
Mere possession of stolen property, without other evidence of guilt, is not to be regarded as prima facie evidence of larceny, robbery, receiving stolen property, or burglary. It must be shown that the possession of the defendant was exclusive, recent, and involved a distinct and conscious assertion of property.
926 So.2d at 483-84 (quoting Scobee v. State, 488 So.2d 595, 598 (Fla. 1st DCA 1986)) (emphasis omitted). We concluded that “[t]he circumstantial evidence not only fail[ed] to refute Mr. Bronson Jr.’s reasonable hypothesis of innocence but also fail[ed] to establish a prima facie case of guilt.” Id. at 484-85.
The same is true in this case. Rivers was driving a car, but there were three passengers, two of whom were sitting in the back seat where the stolen purses were found. Rivers was not in exclusive possession of the purses, and he was not placed at the scene of the burglaries when the purses were stolen. The State presented no other evidence to show that Rivers had “conscious,” “substantial,” “personal and exclusive” possession of the purses. See id. at 484 (citing Garcia v. State, 899 So.2d 447, 451 (Fla. 4th DCA 2005)); see also K.V. v. State, 516 So.2d 1087 (Fla. 2d DCA 1987) (holding that juvenile was not in exclusive possession of stolen moped, and inference of guilt was *253 therefore inapplicable, when he was merely pushing it down the street with several other boys).
We also hold that the convictions cannot be sustained under the law of principals. There was no evidence that Rivers intended for the crimes to be committed and assisted another in actually committing them. See Staten, 519 So.2d at 624. Accordingly, we reverse the convictions for two burglaries and two grand thefts relating to the purses stolen from vehicles (counts 1-4).

TV. Burglary and Grand Theft of Thunderbird

The State’s evidence showed that the Thunderbird was burgled and taken between 3:00 p.m. on May 3, when it was last seen by its owner, and 7:00 a.m. on May 4, when it was seen in connection with the attempted burglary of the truck. The State presented no evidence of a more exact time of the theft or the manner by which it was accomplished. The State did present evidence that Rivers was driving the car at 8:30 a.m. on May 4, and over objection it was given the benefit of jury instructions on inferences of guilt.
 On the burglary charge involving the Thunderbird, the trial court instructed the jury that the State must prove that (1) Rivers “entered a motor vehicle owned by or in the possession of’ the named victim and (2) “at the time he did so, he had the intent to commit an offense in that motor vehicle.” See § 810.02(1)(b)(4)(b), Fla. Stat. (2008); Fla. Std. Jury Instr. (Crim.) 13.1. The jury was also instructed: “You may infer that the defendant had the intent to commit an offense inside the motor vehicle if he entered or attempted to enter stealthily and without the consent of the owner.” See § 810.07(1); Fla. Std. Jury Instr. (Crim.) 13.1. But, given that it was not known when or how the car was stolen, there was no proof of stealthy entry. Thus, we agree with Rivers’ argument that the trial court erred by giving this latter instruction. See J.A.S. v. State, 952 So.2d 638 (Fla. 2d DCA 2007) (discussing cases where stealthy entry was or was not shown). However, we conclude that the error was harmless. See Daughtry v. State, 804 So.2d 426 (Fla. 4th DCA 2001) (applying harmless error analysis to improper jury instruction on inference of intent arising from proof of stealthy entry). The facts show that the car was stolen, and the inescapable conclusion is that it was entered with the intent to steal it. We see no reasonable possibility that the error in giving this instruction contributed to the conviction, and we conclude that the erroneous instruction was harmless. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
The jury was also instructed as follows:
Proof that the defendant was in possession of property recently stolen in a burglary of a conveyance, unless such possession is satisfactorily explained, may justify a conviction for burglary of a conveyance if the circumstances of the burglary of the conveyance and the circumstances of possessing the stolen property convince you beyond a reasonable doubt that the defendant committed that burglary.
See State v. Young, 217 So.2d 567, 570 (Fla.1968) (explaining that jury may infer guilt of burglary by inference arising from unexplained possession of recently stolen property); see also Fla. Std. Jury Instr. (Crim.) 13.1.
And it was instructed: “Proof of possession of recently stolen property, unless satisfactorily explained, gives rise to an inference that the possession [sic] of the property knew or should have known that *254 it had been stolen.” See § 812.022(2), Fla. Stat. (2008); Fla. Std. Jury Insto. (Crim.) 14.1.
The trooper’s identification of Rivers as the driver of the stolen Thunderbird established his possession of it. See A.D. v. State, 106 So.3d 67, 70 (Fla. 2d DCA 2013) (“In the context of an automobile theft, [intent] would be shown, if not by aid or participation in the taking of the vehicle, then by some exercise of dominion and control over it afterwards.”) (quoting G.C. v. State, 560 So.2d 1186, 1187 (Fla. 3d DCA 1990)[7] (alteration in original)); cf. Adderly v. State, 462 So.2d 574 (Fla. 3d DCA 1985) (holding that evidence sufficed to show defendant’s possession of stolen auto when defendant was found sleeping in back seat and car keys were on floorboard next to defendant’s hat).
In addition, the evidence was sufficient to establish that the Thunderbird was recently stolen at the time Rivers was shown to possess it. See Burroughs v. State, 221 So.2d 159, 161 (Fla. 2d DCA 1969) (explaining that “ ‘recently ... is not necessarily measured by the mere passage of time” and “depends upon the nature or identity of the stolen property;” noting that autos “are cumbersome to transfer”); Kittles v. State, 897 So.2d 517, 519 (Fla. 4th DCA 2005) (noting instruction on inference given in case where possession of stolen property shown to be no more than eighteen hours after burglary); cf. M.D.S. v. State, 982 So.2d 1282, 1285 (Fla. 2d DCA 2008) (concluding that inference did not apply, in part because State failed to prove when car was taken and thus failed to prove it was “recently’ stolen).
We have considered whether proof of Rivers’ possession, standing alone, would support his convictions. In State v. Graham, 238 So.2d 618, 621 (Fla.1970), the Florida Supreme Court held that “[p]roof of mere naked possession of property recently stolen, not aided by other proof that the accused received it knowing it to have been stolen, is not sufficient to show guilty knowledge” as required for a conviction of buying, receiving, or concealing stolen property. In explaining what more was required, the court said: “Proof of possession should be coupled with evidence of unusual manner of acquisition, attempts at concealment, contradictory statements, the fact that the goods were being sold at less than their value, possession of other stolen property, or other incriminating evidence and circumstances.” Id.
Although the supreme court noted that “a different rule pertains in larceny cases,” id., the Fourth District later held that the same rule now applies in larceny cases due to statutory amendments to chapter 812 in 1977. See Jackson v. State, 736 So.2d 77, 83-84 (Fla. 4th DCA 1999) (tracing back to common law inference of guilt arising from unexplained possession of stolen property). In that case, the Fourth District reversed a conviction for grand theft of a motor vehicle based solely on possession of the recently stolen car and in the absence of any other incriminating evidence or circumstances. But this court, in a case involving burglary and grand theft charges, has stated that the statutory presumption, alone, has been held sufficient to support a theft conviction. State v. Grimmage, 522 So.2d 523, 524 (Fla. 2d DCA 1988). In support of'this proposition, we cited a case of dealing in stolen property, Coleman v. State, 466 So.2d 395 (Fla. 2d DCA 1985), and two cases that predated the 1977 statutory amendments, Morgan v. State, 303 So.2d 393 (Fla. 2d DCA 1974) (robbery); Burroughs, 221 So.2d 159 (auto theft).
*255 In Rivers’ case, we need not decide whether the statutory presumption based on his bare possession of the vehicle would be sufficient to support his convictions for burgling and stealing it. This is because the State also introduced proof of his flight from the trooper. An attempt to elude detection can provide “the other incriminating evidence and circumstances” to support a conviction when combined with the statutory presumption. Kittles, 897 So.2d at 519 (internal quotation marks omitted). “Evidence of flight is relevant to infer consciousness of guilt where there is a sufficient nexus between flight and the crime with which a defendant is charged.” Powell v. State, 908 So.2d 1185, 1187 (Fla. 2d DCA 2005). Athough it is arguably a close question, we affirm Rivers’ convictions for burglary and grand theft of a motor vehicle arising from the theft of the Thunderbird (counts 7 and 8). In doing so, we reject without further comment Rivers’ argument that the State failed to prove venue for this offense.

V. Fleeing to Elude

Last, we address the conviction for fleeing at high speed to elude. Rivers argues that the trial court erred in giving the principals instruction on this charge. We commend the trial court for acknowledging after the trial that this instruction was given in error. But we disagree with the trial court’s conclusion, and the State’s argument on appeal, that the error was harmless.
A principals instruction is warranted when the evidence shows that the defendant aided and abetted in the commission of a crime. See Staten, 519 So.2d at 624. For example, in Michel v. State, 752 So.2d 6 (Fla. 5th DCA 2000), a passenger was properly convicted as a principal to vehicular homicide when the evidence showed that he owned the truck, had been told by a trooper not to drive at night and not to drive on the highway until the truck was properly equipped with tail lights, but procured his codefendant to drive the truck on the highway at night without tail lights, resulting in a fatality when another driver rear-ended the truck.
In the instant case, however, there was no evidence that Rivers aided and abetted another in the offense of fleeing to elude. He properly could be found guilty of this charge only upon a determination that he was driving at the time. In his defense, he presented testimony from McGhee, who claimed that he was the driver, not Rivers. Under the principals instruction, the jury arguably (albeit erroneously) could accept McGhee’s testimony and still convict Rivers. Thus we cannot say that the improper instruction was harmless error. See Masaka v. State, 4 So.3d 1274, 1285-86 (Fla. 2d DCA 2009) (noting that a harmful error occurs with a jury instruction that is “capable of misleading the jury in such a way as to prejudice the defendant’s right to a fair trial” (quoting Lewis v. State, 693 So.2d 1055, 1057 (Fla. 4th DCA 1997))). We reverse the conviction for fleeing to elude (count 6), and we remand for a new trial on this charge.
We reverse the convictions for burglary (counts 1 and 2), grand theft (counts 3 and 4), attempted burglary (count 5), and fleeing to elude (count 6); we affirm the convictions for burglary (count 7), grand theft (count 8), and obstruction (count 9); and we remand for a new trial on fleeing to elude (count 6).
Affirmed in part, reversed in part, and remanded.
GALLEN, THOMAS M„ Associate Senior Judge, Concurs.
MORRIS, J., Concurs in result only.

. § 843.02, Fla. Stat. (2008).

. § 810.02(1 )(b)(4)(b), Fla. Stat. (2008).

. §§ 810.02(l)(b)(4)(b), 777.04, Fla. Stat. (2008).

. § 812.014(2)(c)(l), Fla. Stat. (2008).

. § 812.014(2)(c)(6).

. § 316.1935(3)(a), Fla. Stat. (2008).

. G.C. was approved, 572 So.2d 1380 (Fla.1991), and later receded from in part on other grounds, I.T. v. State, 694 So.2d 720 (Fla.1997).