NORTHCUTT, Judge.
Sean Singleton raises multiple issues on appeal from his convictions for burglary and grand theft. We agree with his assertion that the trial court should have granted his motion for judgments of acquittal because the State’s evidence was legally insufficient to convict him. Accordingly, we reverse the convictions and remand for Singleton’s discharge.
The accusations against Singleton stemmed from the theft of items from a home one morning after the owner had departed for work. The victim testified that he left the house at around 6:30. Several hours later, the owner’s nephew arrived to use his uncle’s computer. The nephew testified that he let himself into the house with a key and immediately noticed that several items were missing, including a computer and a rear projection television set. He then heard a noise, so he went outside to call the police. While the nephew waited outside for the police to arrive, he saw Singleton standing with a dog in the yard next door; Singleton appeared to be taking the dog outside to relieve itself. The nephew testified that he had seen Singleton before, during visits to his uncle in the previous month or so.
*543 Deputies from the Collier County Sheriffs Office responded to the nephew’s call and checked the burgled house, finding no one inside. At trial, a sheriffs sergeant testified that he noticed a rented box truck parked on the property next door. Situated on the property was a residential duplex. The truck was parked in the driveway of the unit nearest the victim’s house. This unit had eviction or foreclosure stickers on the window, and it appeared to be vacant. The adjoining unit seemed to be occupied, but the sergeant got no response when he knocked there.
The hood of the truck felt warm to the sergeant’s touch, but he could not say whether it had been running. The rear of the truck had a rolling cargo door, which was closed but not secured or locked. The sergeant noticed some leaves protruding from under the door. A crime scene technician later testified that the leaves matched shrubbery at the victim’s house but not shrubbery at the neighboring duplex.
The sergeant testified that he smelled a tobacco odor that seemed to emanate from inside the truck. Thinking that someone might be hiding there, he rolled up the cargo door. No one was inside, but the sergeant found what he described as a burning cigar, a Black and Mild brand with a plastic tip. It was resting on the rear edge of the cargo deck but had not been fully visible when the door was closed. Inside the truck, the sergeant also found the burglary victim’s stolen property-
Rental records reflected that the truck had been rented to Richard Clark, who was called to the scene. Clark testified that he had been helping a friend move from one of the duplexes. The day before the burglary, he and the friend, along with the friend’s eighteen-year-old son and Singleton, had partially loaded the truck. He and his friend agreed to return around 3:30 the following afternoon to finish loading; Clark did not know whether Singleton or his friend’s son heard this conversation. Clark had the only ignition key to the truck.
Clark said that the rear door of the truck had not been locked overnight and that the stolen items, the leaves, and the cigar had not been in the truck when he left the previous evening. According to Clark, he told the sergeant that during the move Singleton and his friend’s son had been smoking the type of cigar the sergeant had found in the truck. But the sergeant recounted that Clark said only that Singleton had been smoking that type. Subsequent testing detected Singleton’s DNA on the cigar.
Finally, the sergeant testified that Singleton arrived on the scene a bit later. The sergeant described him as very animated and boisterous. Singleton first said that he had last been at the duplex on the evening before, but when the sergeant indicated that he had different information, Singleton “said that he had been there that morning to deal with his dog.” Parenthetically, we note that the police report stated that Singleton had been staying with his friend and still had his dog there; at trial the State introduced no evidence showing where Singleton and his dog were living at the time of the burglary.
The sergeant testified that he did not know if Singleton went inside the victim’s house, nor did he know if Singleton carried the stolen property outside or put it in the truck. Photographs taken at the scene showed the stolen property neatly packed among the items that had been loaded into the truck from the duplex. A fingerprint found on one stolen item did not match Singleton’s prints. No fingerprints were found inside the burgled residence.
*544 At the close of the State’s case, Singleton moved for judgments of acquittal. He argued that the State’s circumstantial evidence failed to rebut his reasonable hypothesis of innocence and required an impermissible pyramiding of inferences before the jury could reach guilty verdicts. The motion was denied, and Singleton repeats this argument on appeal.
When the State’s case is based wholly on circumstantial evidence, the evidence must be sufficient to establish each element of the offense and it must also exclude any reasonable hypothesis of innocence. Pagan v. State, 830 So.2d 792, 803 (Fla.2002). When a circumstantial evidence case fails to exclude the defendant’s reasonable hypothesis of innocence, the defendant must be acquitted “no matter how strongly the evidence may suggest guilt.” State v. Law, 559 So.2d 187, 188 (Fla.1989).
The State contends that the circumstantial evidence standard is inapplicable here because there was direct evidence that Singleton’s DNA was on the cigar found at the scene. But that was not direct evidence of Singleton’s participation in the burglary and theft; it was direct evidence merely of a circumstance that suggested his participation. See Atkinson v. State, 429 So.2d 726 (Fla. 1st DCA 1983) (characterizing case that included DNA evidence as one based on wholly circumstantial evidence, but affirming convictions where evidence was inconsistent with appellant’s hypothesis of innocence). In his treatise on Florida evidence law, Professor Ehrhardt explained the difference between direct and circumstantial evidence as follows:
Direct evidence is evidence which requires only the inference that what the witness said is true to prove a material fact; e.g., “I saw A shoot B” is direct evidence that A shot B. Circumstantial evidence is evidence which involves an additional inference to prove the material fact; e.g., “I saw A flee the scene” is circumstantial evidence of A’s guilt and direct evidence of flight.
Charles W. Ehrhardt, Ehrhardt’s Florida Evidence § 401.1 (2011 ed.); see also Hertz v. State, 803 So.2d 629, 646 n. 17 (Fla.2001) (quoting Ehrhardt’s definition of direct evidence); Horne v. State, 997 So.2d 1262, 1265 (Fla. 4th DCA 2009) (“Circumstantial evidence is proof of certain facts and circumstances from which the [jury] may infer that the ultimate facts in dispute existed or did not exist.” (quoting Baugh v. State, 961 So.2d 198, 203 n. 5 (Fla.2007)) (internal quotation marks omitted)).
The State is also mistaken in its reliance on the statutory presumption that, in the absence of a reasonable explanation, one in possession of recently stolen property knew or should have known that the property was stolen. See § 812.022(2), Fla. Stat. (2008). Simply put: Singleton was not in possession of the stolen property. He did not have actual possession because the property was not in his hand or on his person, it was not in a container in his hand or on his person, and it was not within his “ready reach” and under his control. See Sundin v. State, 27 So.3d 675, 676-77 (Fla. 2d DCA 2009). Further, the property was not found in plain view on premises under Singleton’s control, which would have supported an inference that it was under his control. See id.
Nor did Singleton constructively possess the property. The State offered no evidence to show that he had dominion and control over the stolen items, which were located in the back of an unlocked truck that was rented to someone else who had the keys. See id. The presumption only applies to “fairly recent, exclusive and unexplained or unsatisfactorily explained” possession of stolen property. Solomon v. *545 State, 145 So.2d 492, 498 (Fla. 2d DCA 1962) (emphasis added).
Thus, the statutory presumption of an accused’s guilty knowledge based on his possession of recently stolen property did not apply here. The question then is whether the State produced other competent evidence from which the jury could lawfully infer Singleton’s guilt to the exclusion of all other inferences. See Law, 559 So.2d at 189. We apply a de novo standard of review, taking the evidence in the light most favorable to the State. Pagan, 830 So.2d at 803.
We conclude that the State’s proof was woefully lacking. The sum total of the evidence against Singleton was (1) he was in the vicinity of the crime and the stolen property after the burglary, and (2) his smouldering cigar was left on the rear edge of the rental truck’s cargo deck sometime shortly before the sheriff’s sergeant discovered it there. At most, the State’s evidence simply established Singleton’s presence at the place where the victim’s property was stored after it was stolen. This was not legally sufficient to prove him guilty of the burglary and theft. See Owen v. State, 432 So.2d 579, 581 (Fla. 2d DCA 1983).
Even when coupled with knowledge that a crime is about to be committed, an accused’s mere presence at the scene does not eliminate a reasonable hypothesis that someone other than the accused committed the crime. See Valdez v. State, 504 So.2d 9, 10 (Fla. 2d DCA 1986) (“Mere knowledge that an offense is being committed is not the same as participation with criminal intent.”); see also Owen, 432 So.2d at 581 (“[W]hen the state relies on circumstantial evidence, the circumstances, when taken together, must be of a conclusive nature and tendency, leading on the whole to a reasonable and moral certainty that the accused and no one else committed the offense charged.”).
This principle is especially appropriate in a case such as this, in which circumstances affirmatively suggested innocent explanations for the accused’s presence. As the victim’s nephew testified, there was nothing unusual about seeing Singleton outside the duplex, and Singleton was not doing anything unusual; he was walking his dog. And, having spent the previous evening helping to load a friend’s belongings into a truck that had then sat unlocked overnight, Singleton reasonably could have been expected to open the truck’s door to check on the contents.
The evidence in this case was legally insufficient to support Singleton’s convictions. Accordingly, we must reverse the convictions and remand with directions to discharge him. Singleton’s other issues are thus rendered moot.
Reversed and remanded with directions.
KHOUZAM and BLACK, JJ., Concur.