NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE OF FLORIDA,                      )
                                       )
            Appellant,                 )
                                       )
v.                                     )          Case No. 2D13-2711
                                       )
RICHARD J. CAMPBELL, DOC #R34922,      )
                                       )
            Appellee.                  )
_____    )

Opinion filed January 21, 2015.

Appeal from the Circuit Court for
Hillsborough County; Kimberly K.
Fernandez, Judge.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Marilyn Muir Beccue,
Assistant Attorney General, Tampa, for
Appellant.

Howard L. Dimmig, II, Public Defender, and
Judith Ellis, Assistant Public Defender,
Bartow, for Appellee.


CRENSHAW, Judge.

        The State of Florida appeals the trial court's order granting Richard

Campbell's renewed motion for judgment of acquittal as to count one, burglary of an

unoccupied dwelling, which was granted after a jury verdict of guilty on that count.  On

appeal the State argues that the court erred in granting the motion because there was sufficient evidence to keep the case with the jury. We have jurisdiction.[1] Because the court erred in concluding that the State had not rebutted Campbell's reasonable hypothesis of innocence, we reverse.

**Background**

In October 2012, Campbell was staying with his ex-girlfriend in a condominium in Tampa in a building in which his friend Josh also lives. The condominium contains a sundeck that can be accessed by all residents and their guests. The victim in this case owns a unit that adjoins the sundeck and in his home he has a safe within which he stored some rings and some gold bars. The victim was away from home on business at all times relevant to the conduct here but was having tile work done while he was away. Though the record does not explain why, it is clear that the safe door was at least partly ajar while he was away.

Because the tile project was messy, the tile setter did much of his work on the sundeck and left the door to the unit open so that he could freely pass between the two. One day, Campbell was on the sundeck and saw the victim's unit. After Campbell informed the tile setter on the sundeck that he was considering having some tile work done, the setter brought Campbell inside the unit to show Campbell some of his work. They then left, though Campbell went back, allegedly to turn off the lights. Subsequently, Campbell returned to the sundeck and made a phone call before the ex-

---

[1]See § 924.07(1)(j), Fla. Stat. (2012); Fla. R. App. P. 9.140(c)(1)(E); State v. Green, 149 So. 3d 1146, 1147 n.1 (Fla. 2d DCA), review denied, No. SC14-1354, 2014 WL 6065835 (Fla. Nov. 12, 2014).

girlfriend picked him up so he could go fishing. When she reached for Campbell's fishing bag, Campbell told her not to touch it in a tone that was out of the norm for their discussions. The ex-girlfriend testified that upon using her Kindle she was able to determine that Campbell had booked airfare to Las Vegas. The victim, upon returning home, realized the items were missing from the safe.

During their investigation, the police were able to track the stolen items to a pawn shop in Las Vegas. The ring was readily identifiable as the same one missing from the victim's safe; the gold bar was not specifically identifiable as the same one.

During trial, the ex-girlfriend testified about a phone call she received from Campbell while he was in jail. The court admitted the call into evidence, which included Campbell's statements that he "had something to do with it" and that he "did not go in there and do it." And when Campbell testified, he asserted that it was his friend Josh who had stolen the items but had given them to Campbell to pawn because Campbell had recently pawned items and would better know their value. He also testified that he thought the items were stolen but not from this victim, and upon realizing it *was* this victim—and that the police would think he was the thief—he gave Josh back some of the items and then fled to Las Vegas where he pawned the rest of the items. The jury was also informed that Campbell had been convicted of prior felonies including crimes of dishonesty. The jury ultimately returned a verdict of guilty, but the court granted a postverdict judgment of acquittal on the burglary of an unoccupied dwelling count concluding that the State had not adequately rebutted Campbell's reasonable hypothesis of innocence. The State appealed.

**Analysis**

"When the State's case is based wholly on circumstantial evidence, the evidence must be sufficient to establish each element of the offense and it must also exclude any reasonable hypothesis of innocence."[2] Singleton v. State, 105 So. 3d 542, 544 (Fla. 2d DCA 2012) (citing Pagan v. State, 830 So. 2d 792, 803 (Fla. 2002)). Campbell's possession of the recently stolen items is sufficient to establish the element of intent as to the burglary. First, "[u]nexplained possession of stolen property is sufficient to support a burglary conviction when it occurs as an adjunct to a theft." Bronson v. State, 926 So. 2d 480, 483 (Fla. 2d DCA 2006) (citing Francis v. State, 808 So. 2d 110, 134 (Fla. 2001)). "[T]he 'inference created by the statute is sufficient to convict.' " Haugabrook v. State, 827 So. 2d 1065, 1068 (Fla. 2d DCA 2002) (quoting Coleman v. State, 466 So. 2d 395, 396 (Fla. 2d DCA 1985)).

Campbell asserts, essentially, that the possession of stolen property is not "unexplained."

> In Coleman, we acknowledged the thin line courts tread when analyzing circumstantial evidence in light of the statutory inference.
> "[W]here a defendant gives a patently reasonable explanation for his possession of recently stolen goods which is totally unrefuted, and there is no other evidence of guilt, the court must direct a judgment of acquittal. If, on the other hand, the explanation is only arguably reasonable or if there is any evidence which places it in doubt, the court should permit the jury to make the decision."

Id. at 1068-69 (quoting Coleman, 466 So. 2d at 396-97) (emphasis added). In this case, even if we accept Campbell's story as "patently reasonable," it was placed in

---

[2]The proper application of this rule, and indeed its continued vitality, are pending before the supreme court. See Knight v. State, 107 So. 3d 449, 451 (Fla. 5th DCA 2013), review granted, No. SC13-564, 2014 WL 3767875 (Fla. July 29, 2014).

- 4 -

serious doubt when the jury learned of his felony convictions including crimes of dishonesty. See id. Thus, the court should have left the decision with the jury. See id. Accordingly, a judgment of acquittal should not have been granted on this basis.

Next, Campbell's hypothesis of innocence includes his own testimony. He testified that he received the stolen items from his friend Josh. But he expounded, first, that upon receipt he presumed the items were stolen and that later he found out they came from this victim's home. He then realized that the items would be traced back to him because he had been in the victim's home recently. Campbell testified that he gave some of the items back to Josh and went to Las Vegas and pawned the others. Even at first blush, this is unreasonable: one simply does not "return" stolen items to a burglar but then pawn *other* "hot" items when he knows those items can be traced back to him. It is illogical to assume all of the risk of pawning *some* stolen items and not even get the full benefit of potentially selling all of the items. Moreover, of the items pawned, some were identifiable, such as a ring, and others were not, such as a gold bar. If one were to pawn only *some* items, it would be more logical to pawn the harder-to-identify items— the gold bar—than the more readily identifiable items—the ring. Accordingly, Campbell's story does not hold up and the State did not need to rebut it. See Westbrooks v. State, 145 So. 3d 874, 878 (Fla. 2d DCA 2014) ("The State is not required to rebut a hypothesis of innocence that is unreasonable." (citing Henderson v. State, 679 So. 2d 805, 806 (Fla. 3d DCA 1996))).

Furthermore, the State *did* rebut Campbell's hypothesis of innocence. The court concluded that the State did not establish that there was evidence that Campbell assisted another in committing the crime. But the record, along with the inferences

taken in the State's favor, <u>Williams v. State</u>, 110 So. 3d 59, 61 (Fla. 2d DCA 2013), reflects that Campbell "cased" the victim's unit before the robbery as evidenced by Campbell's first appearance with the tile setter, his return to turn off the lights, and the subsequent conversation on the sundeck. Surveilling a location prior to a burglary or theft is evidence of a conscious intent and an overt act assisting another in commission of a crime. <u>See</u> <u>Mathis v. State</u>, 51 So. 3d 1250, 1251 (Fla. 2d DCA 2011) ("[I]n order to be a principal in a crime, one must have a conscious intent that the crime be done and must do some act or say some word which was intended to and does incite, cause, encourage, assist, or advise another person to actually commit the crime." (quoting <u>L.J.S. v. State</u>, 909 So. 2d 951, 952 (Fla. 2d DCA 2005) (internal quotation marks omitted))). And the court erred in discounting Campbell's admission: while the court has the initial gatekeeping function regarding admissions as it does other evidence, such as an initial relevance determination, the contours of the admission go to the weight of the evidence and are appropriate for the jury's consideration. In this case, the extent of Campbell's admission is ambiguous. But the ambiguity is as to its scope—essentially its meaning—not to a more threshold inquiry such as whether it was made at all. The *meaning* of Campbell's statements was a question for the jury. <u>Cf.</u> <u>Davis v. State</u>, 121 So. 3d 462, 492 (Fla. 2013) ("Ultimately, we find that the erroneous admission of the transcript did not impact the jury's ability to resolve for itself the meaning of Davis's statement . . . . [T]he jury was provided with accurate instruction as well as the means to evaluate Davis's recorded statements."). Because the import of the admission is a jury question rather than a gatekeeping function, the court erred in taking the issue from the

jury and granting the judgment of acquittal.  Accordingly, we reverse with directions to reinstate the verdict.

Reversed and remanded with directions.

SILBERMAN and VILLANTI, JJ., Concur.